STATE OF NORTH CAROLINA v. FRANK ZISER LOVELACE, JR.

(Filed 12 January, 1968.)

1. **Burglary and Unlawful Breakings § 10—**

Evidence of the State tending to show that two defendants were observed at the entrance of a restaurant early one morning, that at the approach of officers one defendant tossed away a screwdriver and hammer, and that the door to the entrance of the restaurant showed evidence of tool marks around the lock, *held* sufficient to be submitted to the jury on

the issue of defendants' guilt of possessing housebreaking implements without lawful excuse.

**2. Criminal Law § 9—**

A defendant who enters into a common design for a criminal purpose is equally deemed in law a party to every act done by others in furtherance of such design.

APPEAL by defendant from *Bundy, J.,* August 7, 1967 Schedule "A" Session, MECKLENBURG Superior Court.

William Joseph Dixon and the appellant, Frank Ziser Lovelace, Jr., were jointly indicted for the unlawful and felonious possession, without lawful excuse, of certain implements of housebreaking, to wit, a large screwdriver and hammer. At the trial, both defendants entered pleas of not guilty. The State's evidence disclosed this factual situation: At 1:45 on Sunday morning, February 5, 1967, Officers Eidson and Reynolds of the Charlotte Police Department were on routine patrol in an unmarked police car. As they passed Albert's Restaurant a movement near the front door attracted their attention. The lights at the front door were very dim, more so than those at the rear of the building. The officers circled the building and stopped in front. Eidson testified:

"... I saw Mr. Dixon and Mr. Lovelace right at the entrance door. I drove my car across through the parking lot and pulled in front of the front door with my headlights shining right at the door. The defendants, Dixon and Lovelace, were not more than two feet from this front door.

At the time I pulled up and put my lights on them there by the door, I saw Mr. Dixon throw something through the air. This object landed approximately ten to twelve feet away on the walk in front of the restaurant, about a three foot sidewalk. I went to this object and it was a screw driver approximately 14 or 16 inches in length, and what I called a machinist's hammer, or a ball peen hammer, about average size.

*       *       *

The front door of this restaurant is an aluminum frame door, made out of aluminum with large plate glass in the door. At that time, I had an occasion to examine the door jamb or door frame, as well as the aluminum door, and I found two small indentations or marks on the side of the door with the lock and latch, approximately even with the door handle and latch. . . ."

The two men were placed under arrest and warned of their constitutional rights. Neither made any statement except on the way to the police station one of them said, "Our car was out of gas. We

were going to get some gas." There was no automobile anywhere near the building. Both men had been drinking.

The defendants did not offer evidence. The jury returned a verdict of guilty as to both. From judgment of three years imprisonment, the defendant Frank Ziser Lovelace, Jr. appealed.

*T. W. Bruton, Attorney General; James F. Bullock, Deputy Attorney General, for the State.*

*Eugene C. Hicks, III, for defendant appellant.*

HIGGINS, J.  Both Dixon and Lovelace were charged with the felonious possession of implements of housebreaking. Both were at the entrance to the restaurant at 1:45 on Sunday morning. They were within three feet of the front entrance door which, when examined, showed evidence of tool marks around the lock. As the two men became alerted to the presence of the officers, Dixon attempted to prevent the discovery of the large screw driver and hammer, both of which he held, by throwing them away.

The tools, though capable of legitimate use, nevertheless under the circumstances disclosed by the evidence, permitted a legitimate inference they were intended for the purpose of breaking into the restaurant. Obviously, the attempt to hide them tends to show their possession was without lawful excuse. Although the tools were seen ·in the hands of Dixon only, who did not appeal, nevertheless, if the men were acting together in the attempt to use them to force entry into the restaurant, both in law would be equally guilty of the unlawful possession. This Court said, in *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340:

". . . 'Everyone who enters into a common purpose or design ·is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any one of the others, in furtherance of such common design.' *S. v. Jackson,* 82 N.C. 565; *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *S. v. Summerlin* — 'Hole-in-the-Wall' case, — 232 N.C. 333, 60 S.E. 2d ᐧ322; *S. v. Anderson,* 208 N.C. 771, loc. ͏cit. 786, 182 S.E. 643; *S. v. Herndon,* 211 N.C. 123, 189 S.E. 173."

The evidence was sufficient to warrant the finding that Dixon ·and Lovelace were acting together at the time of discovery, shortly after midnight on Sunday morning. Both were together at the dimly lighted door ᐧof a closed building. Both had been drinking. ·After arrest, they were ᐧplaced in the rear seat of. the police car and on the way to headquarters, one of the men volunteered the. statement,

"Our car was out of gas. We were going to get some gas." The evidence warranted the finding the men were acting together and although the tools were only seen in the hands of Dixon, yet the evidence warranted the finding that both were there attempting to use them to force entry into the restaurant.

We have reviewed the objections to the charge. When considered contextually, we find it free from valid objection.

No error.