STATE OF NORTH CAROLINA v. RODERICK THOMAS JOYNER

No. 72

(Filed 12 June 1979)

**1. Rape § 5— first degree rape—use of deadly weapon—sufficiency of evidence**

The State's evidence was sufficient to show that a rape victim's resistance was overcome and her submission procured by the use of a deadly weapon so as to support submission of an issue of defendant's guilt of first degree rape where it tended to show that defendant raped the victim twice, and that shortly before the second rape the victim and her daughter were threatened with a .22 caliber pistol and told that they both would be killed "if [the victim] didn't do everything they wanted [her] to do."

**2. Robbery § 4.3— armed robbery—continuing threat of use of firearm**

The State's evidence was sufficient for the jury to find that a ring was taken from the victim by a "threatened use" of a firearm within the meaning of the armed robbery statute where it tended to show that, on several occasions prior to the taking of the ring, a pistol had been pointed at the victim to force her to commit certain acts, and it had been made clear to her that the pistol would be used against her if she failed to comply, since this continuing threat extended to every subsequent act by her.

**3. Criminal Law §§ 9, 113.7— acting in concert—act constituting part of crime not necessary**

It is not necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

**4. Criminal Law § 9.3— conviction under principle of acting in concert**

Defendant could properly be convicted of the crime against nature, assault inflicting serious injury, and armed robbery under the principle of concerted action, even if there was no evidence that defendant did any act necessary to constitute such crimes, where the evidence tended to show that defendant and four other men were riding around together before the crimes took place; two of them first entered the victim's home together, followed closely by the other three; once inside they did nothing other than to assault the victim, terrorize her, sexually abuse her and steal from her; afterwards they all left together; and four of them, including defendant, were shortly thereafter found still together, with the fruits of one of their crimes and the instrumentality of another amongst them.

**5. Criminal Law § 113.7— charge on acting in concert**

The trial court's instruction on acting in concert that "if two or more persons agree to act together with a common purpose to commit a crime and do

commit that crime, each of them is held responsible for the acts of the other done in the commission of that particular crime" was not unfavorable to defendant.

**6. Criminal Law § 114.2— statement of defendant's contentions—no expression of opinion**

In a prosecution for first degree rape, armed robbery, felonious entry, crime against nature and assault inflicting serious injury in which the trial judge instructed that, with regard to the sexual assaults, defendant contended that when he entered the victim's house everyone seemed to be laughing and enjoying themselves, and if the jury found that he did participate in any of these acts, he thought it was with the victim's consent and that to him it seemed that "everybody was just trying to have a little fun," defendant failed to carry his burden of showing that such contentions were so lacking in evidentiary support and contrary to what defendant in fact contended that in giving them the trial court ridiculed or reduced to absurdity his defense and thereby expressed an opinion adverse to defendant in violation of G.S. 1-180 (now G.S. 15A-1232).

**7. Criminal Law §§ 89.4, 169.6— refusal to permit witness to read from transcript —prejudice not shown**

Defendant failed to show that he was prejudiced by the trial court's refusal to permit defendant to have the prosecutrix read from the transcript of a prior trial in order to refresh her recollection as to what she said at that trial where the record does not reflect whether, in fact, the prosecutrix made an inconsistent statement at the prior trial or whether reading the transcript would have refreshed her recollection so that she could have testified about it.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

BEFORE *Judge Small* at the 12 September 1977 Session of PITT Superior Court defendant was tried and convicted on indictments proper in form of first degree rape, armed robbery, felonious entry, crime against nature, and assault inflicting serious injury. The first degree rape and armed robbery convictions were consolidated for judgment, and defendant sentenced to life imprisonment. The felonious breaking and entering and crime against nature convictions were likewise consolidated for judgment, and defendant sentenced to 10 years imprisonment to begin at the expiration of the life sentence. He was sentenced to two years imprisonment on the assault conviction.

Defendant appeals to this Court from the judgments entered in the rape and robbery cases pursuant to G.S. 7A-27(a). We allowed his motion for initial review by this Court in the other matters pursuant to G.S. 7A-31(a). Other cases arising out of the same

facts as this one but involving different defendants are *State v. Sylvester Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978); *State v. Curmon*, 295 N.C. 453, 245 S.E. 2d 503 (1978); and *State v. Barnes*, 297 N.C. 442, 255 S.E. 2d 386 (1979).

This case was docketed and argued as No. 24 at the Spring Term 1978.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Associate Attorney, for the State.*

*Jeffrey L. Miller, Attorney for defendant appellant.*

EXUM, Justice.

Defendant's assignments of error challenge the following actions of the trial court: (1) denial of defendant's motion to dismiss, because of insufficiency of the evidence, the charges of first degree rape, armed robbery, crime against nature, and assault inflicting serious injury; (2) instructing the jury on the principle of "acting in concert"; (3) stating the contentions of defendant; and (4) curtailing defendant's cross-examination of one of the state's witnesses. We find no merit in any of defendant's assignments of error and conclude that he has had a fair trial free from prejudicial error.

The state's evidence here is substantially as it was in the *Sylvester Joyner*, *Curmon*, and *Barnes* cases. It tended to show that around 7:15 p.m. on 11 January 1977 Mrs. Carolyn Lincoln was at home alone with her four year old daughter, Mara Carolyn Lincoln. Mrs. Lincoln lived on Route 8, two or three miles outside of Greenville. She answered a knock on her door and thought she recognized the voice of a neighbor. Upon opening the door she realized she did not know the man whom she described as a "young black man, tall and thin, wearing a jacket and cap." This man asked to use her telephone. She refused saying that she did not have a telephone and started to close the door. Two men then forced themselves into her home. One of them knocked her to the floor and lay down on top of her while the other searched through the house to see if anyone else was there. Upon learning that Mrs. Lincoln and her daughter were alone one of these men pulled her into the kitchen and held her while the other pulled off

her clothes. These men then sexually abused her and threatened her and her child with death if she said anything.

Three other men then entered the house, one of whom Mrs. Lincoln identified as the defendant, Roderick Joyner. Four of the men, including defendant, were in her kitchen "standing around and laughing" while one of the others had forcible sexual intercourse with her.

Generally these men terrorized Mrs. Lincoln and her daughter. They secured a loaded .22 caliber pistol owned by Mrs. Lincoln, put the pistol to her head, and threatened to kill her. During one episode of sexual abuse they brought her daughter into the kitchen, pointed the gun at her daughter's head, and threatened to kill her daughter if Mrs. Lincoln did not comply with all of their wishes. Defendant had forcible sexual intercourse with Mrs. Lincoln twice, once before she and her daughter were threatened with the pistol and once thereafter. Meanwhile one of the men in the presence of all the others forced a drink bottle into her rectum. Mrs. Lincoln was forced, during the course of the episode and in the presence of all the men, to perform fellatio on some of them but not on the defendant. At least one instance of forcible fellatio occurred while defendant was raping her.

After these savage instances of sexual abuse and with all five of her abusers "in the kitchen standing around my feet . . . they tried to pull my ring off." When they failed in this, she took the ring off and gave it to one of the men. Two of the men then started dragging her into her front bedroom. She began screaming and was hit over the back of the head. She said, "The other three men were in front of me while the two were trying to pull me out the door. . . . The next thing I can remember was crawling in the house off the front porch." Mrs. Lincoln was able to go to a neighbor's house where she called the sheriff whose deputies responded immediately to her aid.

Sheriff's deputies located the defendant and three of his companions, Roy Lee Barnes, Sylvester Joyner, and Alton Ray Curmon together at a residence in Greenville in the early morning hours on 12 January 1977. The other assailant, Roy Chester Ebron, had been earlier arrested. Defendant and the three others with him were then arrested. At the place of this arrest a .22 caliber revolver identified as that owned by Mrs. Lincoln was

·found in a field jacket lying on the floor close to where defendant ·was lying. Several similar jackets were taken from this location. Mrs. Lincoln's diamond ring fell from the pocket of one of them and was likewise seized by the arresting officers.

After defendant's arrest he was fully advised of his rights to remain silent and to have a lawyer. After duly waiving these rights, defendant made a voluntary statement to the arresting officers. In this statement defendant admitted having entered the home of Mrs. Lincoln on the night in question with four others after which he and several of the others "had a sexual relationship with her."

Defendant was 16 years old.

Mrs. Lincoln was examined by her physician, Dr. Howard Satterfield, at 11:03 p.m. on 11 January at Pitt County Memorial Hospital. He found her "very upset, crying, sobbing and had blood all over her. She was extremely torn up." He found large bruises on both sides of her neck, a severe abrasion on her left knee, and tenderness in her lower back. Her labia were swollen two to three times their normal size and she suffered multiple cuts, some of them quite deep, in and around her rectum, which had been expanded to three or four times its normal size.

I

[1] Defendant first assigns as error the trial judge's denial of his motion that the first degree rape charge be dismissed on the ground that there is no evidence that the victim's resistance was "overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her" — an essential statutory element of first degree rape. G.S. 14-21(1)(b). The assignment is without merit. The state's evidence tends to show that defendant raped Mrs. Lincoln twice, once before her life and that of her child were threatened with a .22 caliber pistol and again thereafter. The trial judge correctly called the jury's attention to the state's contention that it was this second sexual intercourse in which the deadly weapon had figured. Shortly before this second rape by defendant Mrs. Lincoln and her daughter had been threatened with the weapon and told that they both would be killed "if I didn't do everything they wanted me to do." This evidence is amply sufficient for the jury to find that her

resistance at least on the second occasion was overcome and her submission procured by the use of a deadly weapon within the meaning of the statute. *State v. Carson*, 296 N.C. 31, 249 S.E. 2d 417 (1978); *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976). In the last cited case this Court said, 290 N.C. at 444, 226 S.E. 2d at 494-95:

> "[A] deadly weapon is used to procure the subjugation or submission of a rape victim within the meaning of G.S. 14-21 (a)(2) when (1) it is exhibited to her and the defendant verbally, by brandishment or otherwise, threatens to use it; (2) the victim knows, or reasonably believes, that the weapon remains in the possession of her attacker or readily accessible to him; and (3) she submits or terminates her resistance because of her fear that if she does not he will kill or injure her with the weapon. In other words, the deadly weapon is used, not only when the attacker overcomes the rape victim's resistance or obtains her submission by its actual functional use as a weapon, but also by his threatened use of it when the victim knows, or reasonably believes, that the weapon is readily accessible to her attacker or that he commands its immediate use."

[2] Defendant's argument that the armed robbery charge should have been dismissed because of insufficiency of the evidence is likewise without merit. The basis for this charge was the theft of Mrs. Lincoln's diamond ring. Defendant argues there is no evidence that one "who, having in possession or with the use or threatened use of any firearms or other dangerous weapon . . . whereby the life of a person is endangered or threatened," G.S. 14-87, took the ring. This same argument was raised and correctly answered against one of defendant's accomplices, Sylvester Joyner, in *State v. Joyner, supra*, 295 N.C. 55, 243 S.E. 2d 367 (1978). This Court there said, 295 N.C. at 64, 243 S.E. 2d at 373:

> "It is clear from this evidence that Ms. Lincoln was placed under a continuing threat with a firearm. Though Ms. Lincoln did not testify that defendant actually pointed the gun at her at the time she gave her ring to his accomplice, earlier there had been such 'use' of the firearm as to force her to commit certain acts, and it had been made clear to her

on several occasions prior to the actual taking of her ring that the firearm would be used against her if she did not comply. This continuing threat extended to every subsequent act by her, and thus constituted a 'threatened use' of a firearm which 'endangered or threatened' her life within the terms of G.S. 14-87(a). *See also State v. Harris*, 281 N.C. 542, 189 S.E. 2d 249 (1972). The evidence presented by the State was, therefore, sufficient to overcome defendant's motion for nonsuit."

These assignments of error are overruled.

## II

By defendant's next several assignments of error he contends the trial court improperly applied the principle of concerted action. Defendant argues that in order to be convicted of a crime under this principle, a defendant must personally do at least one act necessary to constitute at least part of the crime. Under this view defendant contends the charges of crime against nature (forcible fellatio), assault inflicting serious injury (insertion of the drink bottle into Mrs. Lincoln's rectum), and armed robbery (of Mrs. Lincoln's ring) should have been dismissed since there is no evidence that defendant personally did any act constituting a part of any of these crimes. He further argues that even if there is some evidence to support these charges, Judge Small erred in defining the principle of concerted action. We disagree. We hold that Judge Small correctly applied the principle in ruling on defendant's motions to dismiss. In addition, his jury instructions on the principle were not unfavorable to defendant.

Defendant relies on *State v. Mitchell*, 24 N.C. App. 484, 211 S.E. 2d 645 (1975) for his view of the concerted action principle. In *Mitchell* the evidence showed that Gary Twing and Russell Wyler, soldiers at Fort Bragg, were standing at a bus stop on Hay Street in Fayetteville together with about 20 other people. Defendant Mitchell walked up to the group and asked Wyler to "Come here." Wyler walked over to defendant whereupon defendant, brandishing a razor, robbed Wyler of his wallet. Wyler's friend, Twing, then walked over and one Donald Tucker, standing near defendant, put a knife against Twing's throat and robbed Twing of his wallet. Defendant was convicted at trial of the armed robbery of both Wyler and Twing. The state relied on the

principle of concerted action to convict defendant of both offenses and the trial court instructed the jury on it.

The Court of Appeals concluded that the instructions were erroneous because the concerted action principle was not applicable on these facts to convict defendant of the robbery of Twing. The Court of Appeals said, *id.* at 486-87, 211 S.E. 2d at 647:

> "If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, the judge must explain and apply the law of 'acting in concert.' . . .
>
> "According to the evidence in these cases, the defendant did all of the acts necessary to constitute the crime of armed robbery of Russell Wyler, but none of the acts necessary to constitute the crime of the armed robbery of Gary Twing. Under these circumstances, the law of 'acting in concert' was not applicable to the charge of armed robbery of Gary Twing by the defendant . . . ."

If the result in *Mitchell* is correct and the principle of concerted action not available to convict defendant there of the robbery of Twing, the reason is not because defendant did none of the acts necessary to constitute the crime of armed robbery of Twing. The reason is because there was no evidence to show that the defendant and Tucker acted together in robbing Twing. The evidence, instead, showed that Tucker's robbery of Twing was an independent, individual act on his part in which the defendant was not involved.

The principle of concerted action need not be overlaid with technicalities. It is based on the common meaning of the phrase "concerted action" or "acting in concert." To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose. See definitions of "concert," Webster's Third New International Dictionary 470 (1971). These terms mean the same in the law of crimes as they do in ordinary parlance.

[3] Where the state seeks to convict a defendant using the principle of concerted action, that this defendant did some act forming a part of the crime charged would be strong evidence that he was

acting together with another who did other acts leading toward the crimes' commission. That which is essentially evidence of the existence of concerted action should not, however, be elevated to the status of an essential element of the principle. Evidence of the existence of concerted action may come from other facts. It is not, therefore, necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

In *State v. Lovelace*, 272 N.C. 496, 158 S.E. 2d 624 (1968), two men, Dixon and Lovelace, were convicted of the felonious possession of implements of housebreaking. The tools were seen in the actual possession of Dixon only. Both men, however, were observed at the entrance to a restaurant at 1:45 a.m. on a Sunday morning. The front door to the restaurant showed evidence of tool marks around the lock. This Court held that even if only Dixon had actual possession of the tools at the time the men were apprehended, "if the men were acting together in the attempt to use them to force entry into the restaurant, both in law would be equally guilty of the unlawful possession." *Id.* at 498, 158 S.E. 2d at 625. Concluding that the evidence was sufficient to find that the two men "were acting together," the Court, on Lovelace's appeal, affirmed his conviction.

In *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E. 2d 572, 586 (1971), *death penalty vacated*, 408 U.S. 939 (1972), this Court said:

"The court instructed the jury that one of the theories upon which the State was proceeding was that the defendant and Frazier were acting in concert. He thereupon charged the jury correctly that the mere presence of a person at the scene of a crime at the time of its commission does not make him guilty of the offense, but that if two persons are acting together, in pursuance of a common plan and common purpose to rob, and one of them actually does the robbing, both would be equally guilty within the meaning of the law and if 'two persons join in a purpose to commit a crime, each of

them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose; that is, the common plan to rob, or as a natural or probable consequence thereof.' "

[4, 5] In this case before us the evidence is plenary that all five of these men were acting together pursuant to a common plan to assault, terrorize, sexually abuse, and steal from Mrs. Lincoln. The evidence tended to show that they were all together riding around before the crimes took place. Two of them first entered Mrs. Lincoln's home together, followed shortly by the other three. Once inside they did nothing other than to assault Mrs. Lincoln, terrorize her, sexually abuse her, and steal from her. Afterwards they left together. Four of them were shortly found still together with the fruits of one of their crimes and the instrumentality of another amongst them. The jury could find from this evidence that all of these men are equally guilty of all crimes committed by any one pursuant to their common purpose under the principles approved in *Lovelace* and *Westbrook*. The instructions on acting in concert given by the trial judge seem to have been taken from our *Pattern Jury Instructions for Criminal Cases*. See N.C.P.I.— Crim. 202.10. He said:

> "There is a principle in law known as acting in concert. I will endeavor to explain that principle to you now. For a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons agree to act together with a common purpose to commit a crime and do commit that crime, each of them is held responsible for the acts of the other done in the commission of that particular crime."

These instructions were not unfavorable to defendant.

We, therefore, overrule defendant's assignments of error relating to the application of the concerted action doctrine.

### III

[6] Defendant next assigns as error the trial court's statement of his contentions. He argues in his brief:

> "[T]he contentions as stated by the trial judge, taken as a whole, served to characterize his defense as contrived, baseless and ridiculous; were without support in the evidence; and constituted an impermissible and prejudicial expression of opinion before the jury in violation of GS 1-180."

His brief, however, never, except by references to various exceptions in the record, specifies which of the trial court's statements involving defendant's contentions fall into the challenged categories. We have, nonetheless, carefully examined the instructions on this point.

Generally as to each of the crimes charged the trial court instructed the jury that defendant contended he was not guilty, did not do any of the acts charged, and was not acting in concert with others who might have done them. With regard to the sexual assaults the trial court also told the jury that defendant contended that when he entered the house everyone seemed to be laughing and enjoying themselves and if it found that he did participate in any of these acts, he thought it was with the consent of Mrs. Lincoln and that to him it seemed that "everybody was just trying to have a little fun." We gather that it is the statements of defendant's contentions regarding the sexual assaults to which defendant directs his arguments.

His argument seems to be that these contentions were not supported by the evidence, were contrary to all the evidence and were not actually made by him. For these reasons, when the trial judge gave these contentions, he ridiculed and reduced to absurdity defendant's entire defense and thereby expressed an opinion adverse to defendant in violation of G.S. 1-180 (now G.S. 15A-1232).

Defendant relies on *State v. Douglas*, 268 N.C. 267, 150 S.E. 2d 412 (1966), where defendant was convicted of assaulting Louis Lipinsky and stealing a suit coat valued at $45.00 from Louis & Sons, a clothing store operated by Lipinsky in Charlotte. Lipinsky, an eye-witness to the crimes, testified against defendant, who offered no evidence. In giving defendant's contentions the trial court said in part, "Lipinsky was just imagining things if he thought this man [defendant] was out there; that Lipinsky never lost a suit of clothes. He didn't have any suit of clothes out there

on a rack. He doesn't even sell suits of clothes." The state in *Douglas* conceded that this portion of the instructions "appears to be an overstatement of defendant's contention." This Court awarded Douglas a new trial saying, 268 N.C. at 271, 150 S.E. 2d at 416:

> "There is no suggestion in the entire record that Lipinsky does not run a clothing store. When the judge charged that defendant contended that Lipinsky, 'doesn't even sell suits of clothes,' the jurors, recognizing the absurdity of such a contention, likely understood that the judge considered the rest of defendant's contentions to be on a par with that one. *State v. Dooley*, 232 N.C. 311, 59 S.E. 2d 808.

> "A trial judge is not required to state to the jury the contentions of either the State or the defendant. In a case where the State's evidence seems to establish defendant's guilt conclusively, and the judge must strain credulity to state any contrary contention for defendant, his obvious solution is to state no contentions at all. A simple explanation of the effect of the plea of not guilty will fulfill the requirement."

In the instant case, there is some support in the evidence for the challenged contentions. The evidence is that defendant entered Mrs. Lincoln's home after two of his accomplices had already entered and begun the sexual abuse of Mrs. Lincoln, which continued as defendant entered. Defendant was the youngest of the five assailants. Mrs. Lincoln testified that the men were "laughing" at about the time defendant entered the kitchen and that after he entered four of the men "were still in the kitchen at the time standing around and laughing. The third man [defendant] had intercourse with me for about five minutes." In defendant's pre-trial statement he admitted having had "a sexual relationship" with Mrs. Lincoln but did not admit that it was by force and against her will.

It is conceivable that defendant did make the contentions at trial to which his counsel now objects. His jury argument is not contained in the record. His counsel on appeal was not his trial counsel. No objection was made to the now challenged contentions at trial. Furthermore at one point after giving some of these contentions, Judge Small told the jury:

"In connection with some of the contentions of parties, I would instruct you, members of the jury, that the arguments of counsel, they being officers of the court, is to be considered by you in weighing and considering the evidence; and the contentions argued to you by counsel in support of the respective sides in this trial that are legitimately warranted by the evidence are to be considered by you in arriving at your verdict, and the Court is only stating a few of the contentions of the party in order to endeavor to explain the law to you that arises on the evidence presented during the course of the trial and out of the charges for which the defendant is being tried."

Near the close of his instructions, Judge Small said:

"I want you to understand that I have no opinion about this case. I have no opinion as to what your verdict ought to be as to any one of the charges for which the defendant is being tried. If I had such an opinion, I am prohibited by law from expressing it. Consequently, I have not expressed any opinion to you. None of the rulings I have made during the course of this trial and nothing else that I have done has been for the purpose of expressing any opinion to you about this case or what your verdict should be."

Considering the entire record and the entire charge contextually, we conclude defendant has not carried the burden, which he has on appeal, of showing that the complained of contentions were so lacking in evidentiary support and contrary to what defendant in fact contended that in giving them Judge Small ridiculed or reduced to absurdity his defense. To the contrary it seems here that Judge Small was earnestly trying to give defendant the benefit of every conceivable defense which had some basis in the evidence, however slim that basis might have been.

This case is more like *State v. Bush*, 289 N.C. 159, 221 S.E. 2d 333, *death penalty vacated*, 429 U.S. 809 (1976), in which this Court found the judge's statement of defendant's contentions to be "logically consistent with defendant's own testimony" and not to constitute an expression of opinion. The Court also said, *id.* at 174-75, 221 S.E. 2d at 342-43:

"Usually the contentions of the parties are apparent from the evidence presented at trial. When the contentions

are not so apparent or counsel's contentions differ from the evidence he produced at trial, this Court does not require the trial judge to be clairvoyant. For this reason, we have consistently held that any misstatements of counsel's contentions must be brought to the trial judge's attention before the jury retires for deliberation so that he has an opportunity for correction."

This assignment of error is overruled.

IV

[7] Finally, defendant contends that the trial court improperly precluded him from cross-examining Mrs. Lincoln for the purpose of impeaching her testimony. Defendant attempted to question the witness about her testimony at an earlier trial involving Alton Ray Curmon. She was not able to recall it. The following appears in the record:

"I don't remember which case it was that involved Alton Ray Curmon, and do not remember much about it because it was a long time ago. I was testifying, I remember occupying the same chair in the same courtroom when I testified. I am sure that I testified. I don't recall testifying in the Curmon case that the third man was the man who did not have intercourse with me. But I just don't recall if I testified to that or not. I don't remember what I testified in that case. I can see the paper writing handed to me and recognize it as a transcript of *State of North Carolina vs Alton Ray Curmon.*

"Q. I will ask you to turn to Page 75 of the trial transcript and from the question, 'What happened then?'

MR. HAIGWOOD: Objection.

THE COURT: Sustained.

(DEFENDANT'S EXCEPTION NO. 1)

"Q. All right. On Page 55 of the transcript I will ask you to read what appears on that line where my finger is pointing.

MR. HAIGWOOD: Objection.

COURT: Sustained.

(DEFENDANT'S EXCEPTION NO. 2)"

Apparently defendant was seeking to have the witness read from the transcript of the prior trial in order to refresh her recollection as to what she said at that trial. While this is proper procedure, we cannot tell from this record whether defendant was prejudiced by failure of the trial court to permit it. The record does not reflect whether, in fact, the witness made a prior inconsistent statement or, for that matter, whether reading the transcript would have refreshed her recollection so that she could have testified about it.

This Court has consistently held that unless testimony improperly excluded is placed in the record, "it is impossible for us to know whether the ruling was prejudicial to the defendant or not." *State v. Poolos*, 241 N.C. 382, 383, 85 S.E. 2d 342, 343 (1955); *accord*, *State v. Chance*, 279 N.C. 643, 185 S.E. 2d 227 (1971), *death sentence vacated*, 408 U.S. 940 (1972); *State v. Martin*, 294 N.C. 253, 240 S.E. 2d 415 (1978).

No prejudicial error has then been shown by these rulings. This assignment of error is overruled.

No error.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.