IN THE SUPREME COURT OF NORTH CAROLINA

No. 392A19

Filed 18 December 2020

STATE OF NORTH CAROLINA

v.

BRUCE WAYNE GLOVER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 267 N.C. App. 315, 833 S.E.2d 203 (2019), finding no error in part, and reversing and remanding in part, a judgment entered on 20 September 2017 by Judge W. Erwin Spainhour in Superior Court, Henderson County. Heard in the Supreme Court on 9 March 2020.

*Joshua H. Stein, Attorney General, by Joseph Finarelli, Special Deputy Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Sterling Rozear, Assistant Appellate Defender, for defendant-appellant.*

MORGAN, Justice.

The appeal in this drug possession case presents two questions for our consideration: First, whether the evidence adduced at defendant's trial was sufficient to support the trial court's instruction to the jury on the theory of acting in concert, and second, if the evidence presented was insufficient to support the instruction, whether the error was harmless. On the facts here, we conclude that the evidence did not support the trial court's instruction on acting in concert. Further, given the

potential for confusion on the part of the jury between the theories of acting in concert and constructive possession as bases for the return of guilty verdicts on the possession of controlled substance charges against defendant, the erroneous instruction was not harmless. Accordingly, the trial court's judgment in this case must be vacated and the matter remanded to the trial court for a new trial.

*Factual Background and Procedural History*

The charges in this matter arose from controlled substances discovered on 29 September 2016 by officers with the Henderson County Sheriff's Office who were investigating complaints of drug activity at a home where defendant Bruce Wayne Glover lived with several people, including Autumn Stepp. Stepp was not at the group's residence when the officers arrived, having departed earlier in the day. Stepp, who regularly used controlled substances such as marijuana, heroin, and methamphetamine, kept materials that she collectively called her "hard time stash"—small amounts of heroin, cocaine, marijuana, methamphetamine, a few pills, and various items of drug paraphernalia—in a small yellow tin. Before her departure from the home on 29 September 2016, Stepp placed the yellow tin in the drawer of a dresser that was located in an alcove near defendant's bedroom, without telling defendant or any of her other housemates about this act.

When the officers knocked on the door of the home, defendant stepped outside to speak with them. During the discussion, a detective asked defendant whether defendant had any contraband in his bedroom. Defendant told the detective that

defendant had used methamphetamine and prescription pills, admitting that the bedroom likely contained drug paraphernalia in the form of "needles and pipes." However, defendant stated that he did not think that officers would find any illegal substances in his personal space in the home. Defendant gave consent for the officers to search his bedroom as well as the alcove near defendant's bedroom which defendant stated that he considered to be part of his "personal space."

In defendant's bedroom, the detective found a white rectangular pill wrapped in aluminum foil inside a dresser drawer; scales, rolling papers, plastic bags, and glass pipes in a small black pouch; and a small bag containing marijuana in a small safe. Officers also discovered the small yellow tin in the drawer of the dresser in the alcove where Stepp had placed it without defendant's knowledge. Inside the tin, officers discovered three plastic bags with crystallized substances. Field tests on the contents of each bag "gave a positive indication for the presence of methamphetamine, cocaine[,] and heroin." At trial, a State Crime Laboratory analyst testified that the three bags collectively contained 0.18 grams of heroin, 2.65 grams of methamphetamine, and less than 0.1 gram of both methamphetamine and cocaine, respectively.

On 20 March 2017, the Henderson County grand jury indicted defendant on one count each of possession with the intent to sell and deliver methamphetamine, heroin, and cocaine, as well as one count of maintaining a dwelling house for the sale of controlled substances. On 24 July 2017, the grand jury indicted defendant for

having attained the status of an habitual felon.

Defendant's case came on for trial at the 18 September 2017 criminal session of Superior Court, Henderson County. In her trial testimony, Stepp testified that the yellow tin containing heroin, methamphetamine, and cocaine was her personal "hard time stash" and that she had not informed defendant or anyone else that she had placed the tin in the dresser drawer before Stepp left the group's house on 29 September 2016. When asked during her testimony if she realized that she was admitting to her own possession of controlled substances, Stepp responded, "Yes. Yes." On cross-examination, Stepp admitted to having used drugs with defendant, but denied that defendant had sold her any controlled substances. When asked again during her testimony about ownership of the drugs discovered in the dresser, Stepp reiterated "if it was in the tin, it was mine."

At the close of the State's evidence, defendant moved to dismiss the charges against him for possessing the controlled substances with the intent to manufacture, sell, and deliver them, and for maintaining a dwelling for the purpose of selling and using controlled substances. The trial court dismissed all charges against defendant except for the charge of simple possession of heroin, methamphetamine, and cocaine. During the jury charge conference, the State requested a jury instruction on the theory of acting in concert in addition to the constructive possession instruction that the trial court had already decided to give to the jury. Defendant objected to the acting in concert instruction; and the trial court denied defendant's request to refrain from

giving the instruction. At the end of the jury charge conference, defendant renewed his objection to the acting in concert instruction, which the trial court again overruled. The trial court thereafter gave instructions to the jury on both constructive possession and acting in concert as legal theories underlying the drug possession charges.

The jury began its deliberations at 3:47 p.m. on the day that the case was submitted to it. At 4:02 p.m. of the same day, the trial court brought the jury back in to the courtroom to address a note sent by the foreperson to the trial court, asking for a transcript of Stepp's testimony. The trial court denied the jury's request, and the jury resumed its deliberations. A short time later, the jury returned to the courtroom at 4:30 p.m. in order to render its verdict. The jury found defendant guilty of simple possession of methamphetamine, heroin, and cocaine. The jury subsequently determined that defendant had attained the status of an habitual felon. In its judgment, the trial court imposed two consecutive sentences of 50 to 72 months of imprisonment. Defendant gave notice of appeal in open court to the Court of Appeals.

In the Court of Appeals, defendant raised several issues including, *inter alia*, that the trial court erred in instructing the jury, over defendant's objection, that the jury could find defendant guilty of possession of the controlled substances at issue on the theory of acting in concert in addition to the theory of constructive possession.[1]

---

[1] Along with his appellate brief, defendant filed a motion for appropriate relief in the Court of Appeals on 7 September 2018. Matters pertaining to the motion for appropriate

The Court of Appeals panel divided on this issue: the majority rejected defendant's contention that the evidence produced at trial was insufficient to support an instruction on acting in concert, *State v. Glover*, 267 N.C. App. 315, 320, 833 S.E.2d 203, 207 (2019), while the dissenting judge concluded both that the evidence was insufficient to support the instruction and that the erroneous instruction was not harmless error, thus entitling defendant to a new trial. *Id.* at 329, 833 S.E.2d at 213 (Collins, J., dissenting).

The entire Court of Appeals panel agreed on the pertinent case law applicable to the resolution of defendant's argument regarding the acting in concert jury instruction. "[I]t is error for the trial judge to charge on matters which materially affect the issues when they are not supported by the evidence." *State v. Jennings*, 276 N.C. 157, 161, 171 S.E.2d 447, 449 (1970). The charge at issue here was possession of drugs, which requires proof that the defendant knowingly possessed a controlled substance. *State v. Galaviz-Torres*, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015). In turn,

> [w]here the state seeks to convict a defendant using the principle of concerted action, that this defendant did some act forming a part of the crime charged would be strong evidence that he was acting together with another who did other acts leading toward the crimes' commission. . . . It is not . . . necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence

relief are not before the Court.

is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*State v. Joyner*, 297 N.C. 349, 356–57, 255 S.E.2d 390, 395 (1979). Thus, in the case at bar, a jury instruction on possession of controlled substances under the theory of acting in concert was proper only if sufficient evidence was produced at defendant's trial showing that defendant acted together with Stepp pursuant to a common plan or purpose to possess the contraband found in the yellow tin. *See id.* at 356, 255 S.E.2d at 395.

In the view of the majority, in this case there

> was sufficient evidence from which the jury could have . . . determined that [d]efendant acted in concert to aid . . . Stepp's constructive possession of the controlled substances found in the metal tin. Specifically, [d]efendant called . . . Stepp, who testified that *she* placed the metal tin in the dresser in [d]efendant's personal space, that the drugs therein were *hers*, that she intended to come back later to use them, and that she and [d]efendant had taken drugs together in the past. This testimony is evidence that . . . Stepp possessed (constructively) the drugs in the metal tin. Further, based on . . . Stepp's testimony along with the State's evidence, the jury could have found that [d]efendant was aware of the presence of the drugs in the metal tin: (1) he admitted to the detective to having just used methamphetamine, and the only methamphetamine found in the house was in the metal tin; *and* (2) he admitted to the detective to having just ingested prescription pills, and a pill found in his bedroom matched a pill found in the metal tin. And the evidence was sufficient to support findings that (1) [d]efendant facilitated . . . Stepp's constructive possession by allowing her to keep her drugs in a place where they would be safe from others; (2) [d]efendant did not intend to exert control over the

> disposition of those remaining drugs, as they belonged to
> his friend, . . . Stepp, and that she controlled their
> disposition; and (3) [d]efendant was actually present when
> the drugs were in . . . Stepp's constructive possession.

*Glover*, 267 N.C. App. at 319–20, 833 S.E.2d at 207.

The dissenting judge on the Court of Appeals panel noted that

> [a]lthough [d]efendant was present when the narcotics
> were found in the dresser drawer, and was thus present at
> the scene of the crime, there is no evidence that [d]efendant
> was present when the tin containing the narcotics was
> placed in the dresser drawer. Moreover, . . . Stepp admitted
> on the stand to her possession of the narcotics. . . . Stepp
> testified that the tin was hers and that the last place she
> had it was at Southbrook Drive, where she and [d]efendant
> used to live amongst other people. When asked where she
> last left the tin, . . . Stepp answered,
>
>> I put it inside a drawer. I want to say I tried
>> to put something over it. But I didn't intend—
>> I wasn't there. I wasn't arrest[ed] that day,
>> because I had just left. I didn't intend to be
>> gone long. But I didn't get back as quickly as
>> I would like to, and I didn't tell anybody it was
>> there, because I didn't think it was relevant.

*Id.* at 331, 833 S.E.2d at 214 (Collins, J., dissenting). The dissenting judge opined

that the jury instruction on acting in concert was erroneous because the dissenter

could discern no evidentiary support for the majority's conclusion that defendant

facilitated Stepp's constructive possession by allowing her to keep her drugs in a place

where they would be safe from others, surmising that "the acting in concert theory of

possession has become confused with the constructive theory of possession in this

case, which is precisely why the acting in concert theory is not generally applicable

to possession offenses." *Id.* at 331–32, 833 S.E.2d at 214 (Collins, J., dissenting) (extraneity omitted). Citing our recent decision in *State v. Malachi*, 371 N.C. 719, 821 S.E.2d 407 (2018), the dissent then conducted a harmless error analysis, under which a defendant bears the burden of demonstrating that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2019). Because "the evidence of [d]efendant's constructive possession was not exceedingly strong" and because "Stepp admitted to possession of the controlled substances," the dissenting judge concluded that "there is certainly a 'reasonable possibility' that the jury elected to convict [d]efendant on the basis of the unsupported legal theory of acting in concert to possess the controlled substances." *Glover*, 267 N.C. App. at 333, 833 S.E.2d at at 215 (Collins, J., dissenting). For this reason, the dissent would have vacated defendant's convictions and remanded the matter to the trial court for a new trial. *Id.* (Collins, J., dissenting). On 8 October 2019, defendant filed notice of appeal to this Court on the basis of the dissent.

## *Analysis*

A jury charge serves several critical purposes: "clarification of the issues, elimination of extraneous matters, and declaration and application of the law arising upon the evidence." *State v. Jackson*, 228 N.C. 656, 658, 46 S.E.2d 858, 859 (1948). As such, "a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *State v. Cameron*, 284 N.C. 165, 171, 200

S.E.2d 186, 191 (1973). In the present case, the jury was instructed that it could find defendant guilty of possessing the controlled substances in the yellow tin under the theory of constructive possession or the theory of acting in concert.

"Constructive possession of contraband material exists when there is no actual personal dominion over the material, but there is an intent and capability to maintain control and dominion over it." *State v. Brown*, 310 N.C. 563, 568, 313 S.E.2d 585, 588 (1984). "Although it is not necessary to show that an accused has exclusive possession of the premises where contraband is found, where possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *Id.* at 569, 313 S.E.2d at 589. As noted in both the majority and the dissenting opinions of the Court of Appeals in this matter, in order to support a jury instruction on the theory of acting in concert, mere presence at the scene of a crime—a fact undisputed in the case at bar—is insufficient; the State must also produce evidence that the defendant acted together with another who did the acts necessary to constitute the crime *pursuant to a common plan or purpose to commit the crime. Joyner*, 297 N.C. at 356–57, 255 S.E.2d at 395; *see also State v. Wilkerson*, 363 N.C. 382, 424, 683 S.E.2d 174, 200 (2009).

All of the judges on the panel of the lower appellate court agreed that sufficient evidence supported a jury instruction on constructive possession by defendant of the drugs in the yellow tin. In the view of the Court of Appeals majority, the evidence presented at defendant's trial also supported a conclusion that defendant did not

intend to exercise control over the contents of Stepp's "hard time stash," but that he did "facilitate[ ] . . . Stepp's constructive possession by allowing her to keep her drugs in a place where they would be safe from others." *Glover*, 267 N.C. App. at 320, 833 S.E.2d at 207. Upon our careful review of the evidence presented at trial, we agree with the view of the Court of Appeals dissent that there was no evidence that defendant acted together with Stepp pursuant to any common plan or purpose regarding the controlled substances in the yellow tin; therefore, the trial court erred in giving a jury instruction on the theory of acting in concert. The evidence at trial tended to show that the yellow tin containing illegal drugs and drug paraphernalia was discovered in a dresser drawer in an area of a shared home that defendant considered his "personal area." Although this fact could indicate defendant's "capability to maintain control and dominion over" the tin, *Brown*, 310 N.C. at 568, 313 S.E.2d at 588, and thereby support the theory of constructive possession, nonetheless the location of the tin, standing alone, does not shed light on any common plan or purpose which was devised between defendant and Stepp regarding the controlled substances in the yellow tin. Likewise, while the testimonial detail that a pill was discovered in defendant's bedroom that was similar to pills found in the yellow tin could suggest that defendant had obtained the pill from the tin at issue, this circumstance would indicate, at most, defendant's intent and capability to control the drugs in the tin—again, constructive possession—instead of a common plan or purpose in which defendant acted in concert with Stepp to protect her "hard time

stash." Defendant acknowledged both having used illegal drugs on the day of the search and having used such drugs with Stepp in the past. While these admissions could potentially serve as "other incriminating circumstances" under a theory of constructive possession, *id.* at 569, 313 S.E.2d at 589, neither of them demonstrates the existence of a common plan or purpose between defendant and Stepp to possess the controlled substances in the yellow tin.

Lastly, with regard to the evidence adduced at trial, defendant denied any knowledge that the tin was in the dresser in his personal area. Consistent with defendant's unequivocal denial, Stepp testified that the yellow tin and its contents were hers alone and that she had not told defendant that she had placed the tin in the dresser drawer shortly before the search by law enforcement officers took place. This evidence does not support either of the theories of defendant's guilt presented by the State of constructive possession of the drugs by defendant or acting in concert with Stepp pursuant to a common plan or purpose. Therefore, in reviewing all of the evidence at trial and determining the jury instructions which were correctly available for the trial court to deliver to the jury here, only a jury instruction premised on the theory of constructive possession properly qualifies, because the evidence is insufficient to support a jury instruction of acting in concert. *State v. Hargett*, 255 N.C. 412, 415, 121 S.E.2d 589, 592 (1961) (holding that instructing the jury on aiding and abetting was error where the evidence at trial did not show that the defendant aided another person in committing the crime, but rather showed that the defendant

"was either guilty as the perpetrator or not guilty at all"). Accordingly, we agree with the dissenting judge of the Court of Appeals on this issue of the trial court's erroneous jury instruction on defendant's criminal culpability on the theory of acting in concert. In doing so, we find plausibility in the dissent's view that the ability to conflate the theory of acting in concert and the theory of constructive possession with facts such as those presented in this case is tenable, as this confusion appears to plague the dissenting opinion of this Court.

We next consider whether the trial court's error was harmless; that is, whether there is a reasonable possibility that, absent the erroneous instruction, the jury would have reached a different verdict. N.C.G.S. § 15A-1443(a); *Malachi*, 371 N.C. at 738, 821 S.E.2d at 421. In this Court's decision in *Malachi*, we emphasized that instructional errors like the one in the instant case are "exceedingly serious" and require "close scrutiny" to ensure that "there is no 'reasonable possibility' that the jury convicted the defendant on the basis of such an unsupported legal theory." 371 N.C. at 738, 821 S.E.2d at 421. Here, the heightened scrutiny referenced in *Malachi* is particularly important in light of the inherent likelihood of potential confusion between the theories of constructive possession and possession by acting in concert. *See, e.g.*, *State v. Diaz*, 155 N.C. App. 307, 314, 575 S.E.2d 523, 528 (2002) ("The acting in concert theory is not generally applicable to possession offenses, as it tends to become confused with other theories of guilt."); *State v. Cotton*, 102 N.C. App. 93, 97–98, 401 S.E.2d 376, 379–80 (1991) ("An acting in concert theory is not generally

applied to possession offenses, as it tends to confuse the issues."); *State v. James*, 81 N.C. App. 91, 97, 344 S.E.2d 77, 81 (1986) ("We note that the acting in concert theory has not been frequently applied to possession offenses, as it tends to become confused with other theories of guilt.").

As we discussed upon determining the erroneous nature of the employment of the instruction on acting in concert here, there was some evidence at trial that would permit a jury to find defendant guilty under a theory of constructive possession: the yellow tin was secreted in an area of the shared home that defendant considered his personal area, defendant had a pill in his bedroom that was similar to pills found in the tin, and defendant admitted to being a user of at least one of the types of controlled substances found in the tin. On the other hand, there was also the trial evidence that defendant denied any knowledge of the yellow tin or its location in the dresser in his personal area, Stepp consistently admitted that the yellow tin contained her "hard time stash," Stepp placed the tin and its illegal contents in the dresser drawer shortly before the tin's discovery, and Stepp had not told defendant of the tin's placement by her in defendant's "personal space." In *Malachi*, we observed that

> in the event that *the State presents exceedingly strong evidence of defendant's guilt on the basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to serious credibility-related questions*, it is unlikely that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory.

*Malachi*, 371 N.C. at 738, 821 S.E.2d at 421 (emphasis added). Here, the State's evidence supporting the theory of constructive possession was both "in dispute" and "subject to serious credibility-related questions" and, while certainly sufficient to warrant a jury instruction, was controverted and not "exceedingly strong." *Id.* Given this circumstance, coupled with the recognized prospect of confusion presented by proceeding upon the theory of possession by acting in concert in conjunction with the theory of constructive possession, we conclude that there is a "reasonable possibility that, had the [trial court not instructed on acting in concert], a different result would have been reached." As a result, we also agree with the dissenting position of the lower appellate court in evaluating the extent of the trial court's error.

*Conclusion*

In light of our determination that the trial court committed prejudicial error in its instruction to the jury on the theory of acting in concert as a basis upon which to find defendant guilty, we reverse the decision of the Court of Appeals, vacate defendant's convictions and resulting judgments against him, and determine that defendant is entitled to a new trial.

REVERSED.

Justice NEWBY dissenting.

The evidence must be viewed in the light most favorable to the State when considering whether it was sufficient to warrant a jury instruction, much like when reviewing a motion to dismiss based on the sufficiency of the evidence. *See State v. Taylor*, 337 N.C. 597, 608, 447 S.E.2d 360, 367–68 (1994) (considering the evidence in the light most favorable to the State when reviewing whether an acting-in-concert instruction was supported by the evidence). Under a sufficiency of the evidence standard, "the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982).

Here the majority does not consider the evidence in the light most favorable to the State but rather relies on Ms. Stepp's statements of exclusive ownership. By doing so, it singles out certain evidence for consideration rather than reviewing the totality of the evidence, including that defendant admitted to having just used the specific drugs that were later found only in the yellow tin, under the proper standard. Considering Ms. Stepp's statements in the light most favorable to the State, I agree with the Court of Appeals that there

> was sufficient evidence from which the jury could have . . . determined that [d]efendant acted in concert to aid Ms. Stepp's constructive possession of the controlled substances found in the metal tin. Specifically, [d]efendant

called Ms. Stepp, who testified that she placed the metal tin in the dresser in [d]efendant's personal space, that the drugs therein were hers, that she intended to come back later to use them, and that she and [d]efendant had taken drugs together in the past. This testimony is evidence that Ms. Stepp possessed (constructively) the drugs in the metal tin. Further, based on Ms. Stepp's testimony along with the State's evidence, the jury could have found that [d]efendant was aware of the presence of the drugs in the metal tin: (1) he admitted to the detective to having just used methamphetamine, and the only methamphetamine found in the house was in the metal tin; and (2) he admitted to the detective to having just ingested prescription pills, and a pill found in his bedroom matched a pill found in the metal tin. And the evidence was sufficient to support findings that (1) [d]efendant facilitated Ms. Stepp's constructive possession by allowing her to keep her drugs in a place where they would be safe from others; (2) [d]efendant did not intend to exert control over the disposition of those remaining drugs, as they belonged to his friend, Ms. Stepp, and that she controlled their disposition; and (3) [d]efendant was actually present when the drugs were in Ms. Stepp's constructive possession.

*State v. Glover*, 267 N.C. App. 315, 319–20, 833 S.E.2d 203, 207 (2019). The jury could reasonably find from the evidence presented that a common plan or purpose existed between defendant and Ms. Stepp to possess the controlled substances in the yellow tin. When viewed in the light most favorable to the State, the evidence presented was sufficient to support the trial court's instruction; the jury resolves any contradictions and discrepancies in the evidence. Thus, the trial court properly instructed the jury on the theory of possession by acting in concert. Accordingly, I respectfully dissent.