STATE OF NORTH CAROLINA v. ROY WAYNE GILMORE, JR.

No. 4A89

(Filed 7 November 1991)

1. **Criminal Law § 45 (NCI4th); Homicide § 21.5 (NCI3d) — murder — acting in concert — evidence sufficient**

There was sufficient evidence in a homicide prosecution to support a finding that defendant acted in concert to kill his father where there was testimony that defendant had told an inmate that he had "masterminded" the killing of his father; the victim was injected with insulin at least twice; and defendant was in his father's home between the two injections. The killing took several hours and the jury could infer that defendant went to his father's home to make sure the killing was going as planned, that defendant was present during a part of the time the killing was consummated, and that defendant was in close proximity to the place where the injections were

STATE v. GILMORE

[330 N.C. 167 (1991)]

administered and ready to aid his mother. If two or more persons act together with a common purpose to commit a crime, each of them who is actually or constructively present at the time the crime is committed is responsible for the acts of the others done in the commission of the crime.

**Am Jur 2d, Criminal Law §§ 168, 172; Homicide §§ 27-29, 445.**

2. **Criminal Law § 794 (NCI4th) — homicide — acting in concert — instructions**

The trial court did not err in a homicide prosecution by giving the Pattern Jury Instruction on acting in concert even though defendant contended that the instruction given was inadequate because there was little or no evidence that defendant was present when the murder was committed. There is a natural inference from the evidence that defendant was present to be sure that the murder was proceeding according to plan.

**Am Jur 2d, Criminal Law §§ 168, 172; Homicide §§ 27-29, 507.**

3. **Criminal Law § 819 (NCI4th) — homicide — interested witness instruction — no error**

There was no prejudicial error in failing to give defendant's requested instruction on interested witnesses where the court gave a correct instruction on interested witnesses. Assuming it was error not to give the requested instruction, it cannot be said that a different result would have been reached at trial.

**Am Jur 2d, Homicide § 536.**

4. **Criminal Law §§ 809, 423 (NCI4th) — homicide — requested instruction — defendant's failure to offer evidence — refused**

The trial court did not err in a murder prosecution by refusing defendant's requested instruction on his failure to offer evidence. A defendant's failure to testify creates no presumption against him, but the prosecutor may comment upon and the jury may consider the fact that a defendant did not offer evidence.

**Am Jur 2d, Trial §§ 577, 590.**

Justice MARTIN concurs in the result.

STATE v. GILMORE

[330 N.C. 167 (1991)]

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Bowen, J.,* at the 5 September 1988 Criminal Session of Superior Court, LEE County, upon a jury verdict of guilty of first degree murder. Heard in the Supreme Court 15 February 1991.

The defendant was tried for first degree murder. The evidence viewed in the light most favorable to the State showed that on 29 August 1986, the defendant's father received an overdose of insulin from which he died seven days later in the Duke Medical Center. Dr. Thomas Clark, a pathologist, testified that in his opinion the deceased had received an injection of insulin at approximately 5:00 p.m. on 29 August 1986 and another injection approximately ten to fourteen hours earlier.

There was evidence that the defendant's mother injected the decedent, who was her husband, with insulin on 29 August 1986. The back of the defendant's home faced the back of his father's home. A witness testified that if a person walked out the back door of the defendant's house he would be in the back yard of the victim's house. The defendant's "live-in girlfriend" testified that when she arose at 11:00 a.m. on 29 August 1986 the defendant was not at home. He came into the house a few minutes later and said he had been to his father's home to use the telephone. The defendant left his home again between 1:00 p.m. and 1:30 p.m. He returned in approximately one-half hour and told his girlfriend he had been to his father's house.

Kenneth R. Green testified that he became acquainted with the defendant while they were serving time at the Sanford Advancement Center in 1986. The defendant told Mr. Green that his father was "running around" on his mother and "it was going to get him killed." The defendant said, "[e]verything would be all right pretty soon, because he was going to come into some money."

Robert Wade Simms, an inmate of the North Carolina Department of Correction, testified that he met the defendant while both of them were inmates in the Lee County Jail. Mr. Simms testified further that the defendant told him he had "masterminded" the killing of his father. At first he and his mother planned to shoot his father with a pistol but because that would be too "messy" they decided to inject him with insulin. The defendant told Mr. Simms he was to receive $100,000.00 in life insurance proceeds from his father's death. Mr. Simms testified that the defendant

said his mother gave his father the first injection of insulin sometime during the night and he went to his father's house at approximately 12:00 noon to make sure his father was dead or almost dead. He said the reason insulin was used is because it is hard to trace. The defendant said that he disposed of the syringes.

The court submitted the first degree murder charge as to the defendant on the theory that he was acting in concert with his mother in the murder of his father. The jury found the defendant guilty of first degree murder. At a sentencing hearing one aggravating circumstance was submitted to the jury which was that the defendant committed the murder for pecuniary gain. The jury answered "no" to this issue and the defendant was sentenced to life in prison. The defendant appealed to this Court.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] The defendant argues under his first assignment of error that the case against him should have been dismissed because the evidence was not sufficient to support a finding by the jury that he acted in concert with his mother in the murder of his father. If two or more persons act together with a common purpose to commit a crime, each of them who is actually or constructively present at the time the crime is committed is responsible for the acts of the others done in the commission of the crime. *State v. Joyner,* 297 N.C. 349, 255 S.E.2d 390 (1979); *State v. Westbrook,* 279 N.C. 18, 181 S.E.2d 572 (1971), *death sentence vacated,* 408 U.S. 939, 33 L.Ed.2d 761 (1972); *State v. Lovelace,* 272 N.C. 496, 158 S.E.2d 624 (1968).

The defendant argues that there is not sufficient evidence to show he was actually or constructively present when the injection was made to find that he acted in concert with his mother to murder his father. He says that all the evidence shows that he was at home in his bed when the fatal injection was made in the early morning hours of 29 August 1986. He argues further that there was no evidence that he communicated to his mother his intent to help her inject his father with the insulin.

The testimony of Mr. Simms, that the defendant told him he "masterminded" the killing of his father, supports a finding by the jury that the defendant communicated to his mother that he would help her when she injected her husband with insulin. There was evidence that the victim was injected at least twice, at 5:00 p.m. and approximately ten to fourteen hours earlier. The evidence showed that between these two injections the defendant was in his father's home twice. The jury could infer from this that the defendant went to his father's home to make sure the killing was going as planned. It took several hours to consummate the killing. The jury could infer that the defendant was actually present during a part of this time. The evidence would also permit an inference that when the defendant was in his own home he was in close proximity to the place where the injections were administered ready to aid his mother. This made him constructively present. *State v. Davis*, 301 N.C. 394, 271 S.E.2d 263 (1980). The defendant's first assignment of error is overruled.

[2] The defendant next contends there was error in the court's charge on acting in concert. The defendant requested a charge under which the court would instruct the jury that the defendant must have been present when the offense was committed. The court did not use this charge but charged from the Pattern Jury Instructions as follows:

> For a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit murder each of them is held responsible for the acts of the others done in the commission of the murder.

N.C.P.I. Crim. 202.10. The defendant concedes that this charge might be adequate in a case in which the evidence showed the defendant was actually present at the time the crime was committed. *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988); *State v. Williams*, 299 N.C. 652, 263 S.E.2d 774 (1980). The defendant contends it is not adequate in this case because there was little or no evidence that the defendant was present at the time the murder was committed.

We do not agree with the defendant's characterization of the evidence. The evidence shows the killing of the defendant's father occurred over a period of several hours. During this time the defendant was actually present in his father's home while his father

was dying. There is a natural inference from this evidence that the defendant was present to be sure the murder was proceeding according to the plan. When the defendant was in his own home he was in close enough proximity to the scene of the murder to be able to render assistance to his mother in committing the crime if needed. This made him constructively present. *State v. Bell*, 270 N.C. 25, 153 S.E.2d 741 (1967); *State v. Sellers*, 266 N.C. 734, 147 S.E.2d 225 (1966); *State v. Wiggins*, 16 N.C. App. 527, 192 S.E.2d 680 (1972).

We have approved charges on acting in concert very similar to the charge in this case in *State v. Williams*, 299 N.C. 652, 658, 263 S.E.2d 774, 778, and in *State v. Joyner*, 297 N.C. 349, 358, 255 S.E.2d 390, 396. The evidence of the defendant's actual or constructive presence at the scene of the murder was sufficiently strong enough that a charge on this feature of the case was not necessary. This assignment of error is overruled.

[3] The defendant argues under his third assignment of error that it was prejudicial error not to give an instruction to the jury as to how to consider the testimony of interested witnesses. At the charge conference the defendant requested and the court agreed to give the following charge from the Pattern Jury Instructions:

> You may find that a witness is interested in the outcome of this trial. In deciding whether or not to believe such a witness, you may take his interest into account. If, after doing so, you believe his testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

N.C.P.I. Crim. 104.20. The court did not give this charge. It charged as follows:

> You are the sole judges of the credibility of each witness. You decide for yourselves whether to believe the testimony of any witness. You may believe all, part or none of a witness's testimony, and in determining whether to believe any witness you should apply the same tests of truthfulness you apply in your everyday affairs.

> As applied to this trial, these tests may include the opportunity of the witness to see, to hear, to know, or remember the facts or occurrences about which he testified, the manner and appearance of the witness, any interest, bias or prejudice

the witness may have, the apparent understanding and fairness of the witness, whether the testimony is reasonable, and whether his testimony is consistent with other believable evidence in the case.

The victim's mother and several of his brothers and sisters testified for the State. They testified to the actions of the defendant's mother at times before the incident and while the victim was in the hospital. They testified as to episodes of sickness the victim had, that the defendant's mother wanted to remove the victim from the Duke University Hospital and return him to Sanford, that the defendant's mother tried to keep anyone from seeing the victim in the hospital unless she or the defendant was present, and that the defendant's mother was adamant that there be no autopsy. The defendant says that these witnesses were interested in the outcome of the case because they knew that under the slayer statute, N.C.G.S. § 31A-4 (1984), they would benefit from the victim's estate if his wife and son were convicted of murder. We note that only the decedent's mother will take his estate if the defendant and his mother are convicted of murder. N.C.G.S. § 29-15(3) (1984).

The defendant argues that because of the weakness of the evidence against him, this testimony by the members of the victim's family was crucial and it was prejudicial error not to give the requested instruction. The State argues that the instruction given in which the jury was told it could consider the interest of a witness when judging his testimony is not significantly different from the instruction requested, which says that the jury may take a witness' interest into account when considering his testimony.

Although the court did not give the interested witness instruction requested by the defendant, it did give a correct instruction on interested witnesses. Assuming it was error not to give the requested instruction, we cannot say that had the error not been committed a different result would have been reached at the trial. None of those who the defendant says were interested witnesses testified as to an essential element of the crime. Their testimony dealt with actions of the defendant's mother and not the defendant. We hold it was not prejudicial error to fail to give the requested instruction. N.C.G.S. § 15A-1443 (1988); State v. Milby, 302 N.C. 137, 273 S.E.2d 716 (1981).

[4] The defendant finally contends there was error because of the court's refusal to give a requested instruction. During the charge conference, the defendant's attorney asked the court to give the charge from the Pattern Jury Instructions that no presumption against the defendant should be made because of his failure to testify, but to modify the instruction to say that no presumption should be made because the defendant did not offer evidence. The court refused to give this charge because it said the defendant had elicited evidence favorable to him through cross-examination. The defendant then withdrew his request for this instruction.

The defendant contends that the instruction he requested was a correct statement of the law as applied to the evidence and the court was required to give this charge. See State v. Pakulski, 319 N.C. 562, 356 S.E.2d 319 (1987). We hold the court did not commit error by refusing to give this charge. A defendant's failure to testify creates no presumption against him. N.C.G.S. § 8-54 (1986); State v. Banks, 322 N.C. 753, 370 S.E.2d 398 (1988). A defendant's failure to offer other evidence as to his innocence stands on a different footing, however. The jury may consider the fact that the defendant did not offer evidence and the prosecuting attorney may comment upon it in his jury argument. State v. Mason, 317 N.C. 283, 345 S.E.2d 195 (1986); State v. Mason, 315 N.C. 724, 340 S.E.2d 430 (1986); State v. Jordan, 305 N.C. 274, 287 S.E.2d 827 (1982). It would have been error for the court to have charged as requested by the defendant. This assignment of error is overruled.

No error.

Justice MARTIN concurs in the result.