STATE OF NORTH CAROLINA v. SHERRY ALMOND VANHOY AND CASI RAE CLONTZ

No. 279A95

(Filed 13 June 1996)

### 1. Criminal Law § 656 (NCI4th)— motion to dismiss—waiver by presentation of evidence

Where defendant presented evidence, she waived the right to appeal the denial of her motion to dismiss made at the close of the State's evidence. N.C.G.S. § 15-173; N.C. R. App. P. 10(b)(3).

**Am Jur 2d, Trial § 854.**

### 2. Homicide § 368 (NCI4th)— first-degree murder—aiding and abetting—constructive presence—sufficiency of evidence

The State's evidence was sufficient to show that defendants were constructively present during a murder so as to support the trial court's submission of issues of their guilt of first-degree murder under the theory of aiding and abetting where it tended to show that defendants promised the perpetrator $15,000 and a truck if he would kill the victim; defendants explicitly instructed the perpetrator how to enter the victim's trailer, where to find the victim, how to kill the victim, where to find money and how to make the murder scene look as if a breaking and entering had occurred; defendants drove the perpetrator to the trailer so he could commit the murder and remained in close enough proximity to the trailer to drive him away just after he committed the murder; and defendants supplied the perpetrator with money for a motel room so he could escape detection in the hours following the murder. The jury could infer from this evidence that both defendants were constructively present because they remained in close enough proximity to the trailer to render assistance to the perpetrator in carrying out the murder, should it become necessary, and that both defendants communicated this intent to the perpetrator through their actions and words.

**Am Jur 2d, Homicide § 445.**

### 3. Criminal Law § 796 (NCI4th); Homicide § 510 (NCI4th)— aiding and abetting—evidence of constructive presence— presence instruction not required

Evidence of defendants' constructive presence at a murder was sufficiently strong so that no instruction on actual or con-

structive presence at the scene of the crime under the theory of aiding and abetting was required in this first-degree murder prosecution where the evidence tended to show that defendants promised the perpetrator $15,000 and a truck if he would kill the victim; defendants explicitly instructed the perpetrator how to enter the victim's trailer, where to find money and how to make the murder scene look as if a breaking and entering had occurred; defendants drove the perpetrator to the trailer so he could commit the murder and remained in close enough proximity to the trailer to drive the perpetrator away just after he committed the murder; and defendants supplied the perpetrator with money for a motel room so he could escape detection in the hours following the murder.

**Am Jur 2d, Trial § 1256.**

Appeal as of right by defendants pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment entered by Helms (William H.), J., at the 17 October 1994 Criminal Session of Superior Court, Stanly County, upon jury verdicts finding defendants guilty of first-degree murder. Defendants' motions to bypass the Court of Appeals as to additional convictions were allowed by this Court 11 September 1995 and 9 November 1995. Heard in the Supreme Court 12 April 1996.

*Michael F. Easley, Attorney General, by Robert J. Blum, Special Deputy Attorney General, and Elizabeth L. Oxley, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant Clontz.*

*Jean B. Lawson for defendant-appellant Vanhoy.*

LAKE, Justice.

In this joint trial, defendant Sherry Almond Vanhoy was tried capitally for the first-degree murder, conspiracy to commit murder and solicitation to commit murder of George Adam Vanhoy. The jury returned verdicts of guilty on all charges. After a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury failed to find the existence of the sole aggravating circumstance submitted and recommended a sentence of life imprisonment. The trial court sentenced

this defendant accordingly and additionally imposed concurrent sentences of nine years' imprisonment each for the convictions of conspiracy to commit murder and solicitation to commit murder. Defendant Casi Rae Clontz was tried noncapitally, and the jury returned verdicts of guilty of first-degree murder and guilty of conspiracy to commit murder of George Adam Vanhoy. The trial court imposed the mandatory sentence of life imprisonment for the first-degree murder conviction and a concurrent sentence of nine years' imprisonment for the conviction of conspiracy to commit murder. We find no error and, therefore, uphold defendants' convictions and sentences.

The State's evidence at trial tends to show that defendant Vanhoy was married to the victim, George Adam Vanhoy. Defendant Clontz was defendant Vanhoy's daughter from a previous marriage. Howard Demetrios Shankle, the actual shooter, testified for the State pursuant to a plea arrangement. On the night of 24 December 1992, defendant Clontz told Shankle that her stepfather, the victim, physically abused her mother and her. Defendant Clontz then offered Shankle and Michael Paul Harris $15,000 in insurance proceeds and a truck if they would kill the victim. They agreed and drove to the Vanhoy trailer on Half-Mile Road. Shankle, armed with his .38-caliber pistol, and Harris got out of the car on the main road and waited for defendant Clontz to drive to the trailer, park the car and go inside. Defendant Clontz told defendant Vanhoy that she had found some people who would kill the victim, but defendant Vanhoy rejected the idea because she believed it would look strange if she was not hurt as well. Shankle and Harris then left.

Several weeks later, on 19 January 1993, defendants saw Shankle walking down the road, and they pulled their car up beside him. Shankle got into the car, and defendant Vanhoy asked if he would still kill the victim for them. Shankle agreed on the condition that he would still receive the $15,000 and the truck in return; defendant Vanhoy said he would. While defendant Clontz drove the car to the Vanhoy trailer, defendant Vanhoy told Shankle that he would find the front door of the trailer unlocked and that when he entered the trailer, he would see the light from a television on in a bedroom and that in that bedroom, he would find the victim in the bed. Defendant Vanhoy also told Shankle he would find some money in the victim's pants pocket. Additionally, Shankle was instructed to take anything he wanted from the trailer and to break a window in order to make it look as if there had been a breaking and entering.

When defendants and Shankle arrived at the main road in front of the trailer, Shankle got out and ran to the trailer. Defendants drove away. Shankle entered the trailer as he was told and shot the victim several times. After taking the victim's wallet, Shankle broke a window and then ran outside and across a field. Defendants arrived in the car, picked Shankle up and drove him away. After giving Shankle approximately $30 for a motel room, defendants pulled into a driveway and let Shankle out of the car.

Both defendants testified on their own behalf, and their evidence tends to show that defendant Vanhoy did not meet Harris or Shankle on 24 December 1992 or any other time and that neither she nor defendant Clontz ever offered anything of value to anyone in exchange for murdering the victim. On the night of the murder, defendant Vanhoy and the victim had dinner, and at approximately 8:10 p.m., defendant Vanhoy went to pick up defendant Clontz from work. The victim stayed home because he was not feeling well, although defendant Vanhoy asked him to ride with her. At about this same time, defendant Clontz called the trailer to tell her mother that a co-worker had offered her a ride home, but no one answered the telephone. Defendant Vanhoy arrived to pick up defendant Clontz, and they left at approximately 8:30 p.m. On the way back home, defendants stopped at a small convenience store to buy a newspaper, but the newspaper box was empty. Defendants then drove to Crossroads Grocery, arriving at approximately 9:00 p.m. They purchased a newspaper, potato chips and bread. Upon returning to the trailer, defendants noticed glass on the porch, and when the victim failed to respond to defendants' calls, they drove to a relative's house for help. Several relatives accompanied defendants back to the trailer, where they discovered the victim's body in the bedroom.

[1] Both defendants assign error to the trial court's denial of their motions to dismiss the charges of first-degree murder, under the theory of aiding and abetting, at the close of all the evidence on the grounds that the evidence was insufficient to show defendants were constructively present during the murder. Specifically, defendants argue that because the evidence shows that at the time of the murder, defendants were at Crossroads Grocery, located several miles from the trailer, they were too far away to be in a position to help Shankle commit the murder and, thus, cannot be said to have been construc̄tively present. Defendant Vanhoy additionally argues, under this assignment of error, that the trial court erred in denying her motion to dismiss made at the close of the State's evidence. However, we

hold that because defendant Vanhoy presented evidence on her behalf, she has waived the right to appeal the denial of this motion. N.C.G.S. § 15-173 (1983); N.C. R. App. P. 10(b)(3).

Murder in the first degree is the unlawful killing of a human being with malice, premeditation and deliberation. N.C.G.S. § 14-17 (1993); *State v. Bonney*, 329 N.C. 61, 405 S.E.2d 145 (1991). "An aider or abettor is a person who is actually or constructively present at the scene of the crime and who aids, advises, counsels, instigates or encourages another to commit the offense." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). In the context of a motion to dismiss relating to the theory of aiding and abetting, this Court has held:

> [T]he State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators. The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators.

*State v. Sanders*, 288 N.C. 285, 290-91, 218 S.E.2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 47 L. Ed. 2d 102 (1976). We have further elaborated that:

> One who procures . . . another to commit a felony, accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close . . . to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense, is a principal in the second degree and equally liable with the actual perpetrator.

*State v. Price*, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971).

The law governing motions to dismiss is well established. "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). The evidence is viewed in the light most favorable to the State, and all reasonable inferences are drawn in favor of the State. *State v. Benson*, 331 N.C. 537, 417 S.E.2d

756 (1992). Any contradictions or discrepancies raised by the evidence do not warrant dismissal of the case; rather, they are for the jury to resolve. *Id.* at 544, 417 S.E.2d at 761.

[2] Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we conclude substantial evidence exists demonstrating defendants' constructive presence. The evidence tends to show that defendants promised Shankle $15,000 and a truck if he would kill the victim. Defendants explicitly instructed Shankle how to carry out the murder. Shankle followed defendants' instructions, and just after the murder was committed, defendants returned and drove Shankle away from the murder scene and gave him $30 for a motel room to ensure he would not be discovered by police in the hours immediately following the murder. From this evidence, the jury could reasonably infer and find as fact that both defendants were constructively present because they remained in close enough proximity to the trailer to render assistance to Shankle in carrying out the murder, should it become necessary, and further that both defendants communicated this intent to Shankle through their actions and words. The evidence, taken in the light most favorable to the State, shows that the defendants fully orchestrated and directed the victim's murder. Accordingly, we conclude that the evidence of defendants' constructive presence was sufficient for the jury's consideration and determination, and that the trial court did not err in denying defendants' motions to dismiss. This assignment of error is overruled.

[3] In their final assignment of error, defendants assert that the trial court erred in failing to instruct the jury on defendants' actual or constructive presence at the scene of the crime under the theory of aiding and abetting. This error, defendants contend, amounted to a partial directed verdict on an element of an offense. The trial court's instruction on first-degree murder based on the theory of aiding and abetting, as to defendant Clontz, was, in part, as follows:

So I charge that if you find from the evidence beyond a reasonable doubt that . . . Howard Demetrios Shankle committed first degree murder, that is, that . . . Shankle intentionally killed the victim with a deadly weapon, and that Howard Demetrios Shankle acted with malice and with premeditation and with deliberation, and that the defendant . . . knowingly advised, instigated, encouraged, procured or aided Shankle to commit the crime, and that in so doing her actions or statements caused or contributed

to the commission of the crime by Shankle, and that the defendant herself had the specific intent to kill the victim formed after premeditation and deliberation, it would be your duty to return a verdict of guilty of first degree murder.

The trial court instructed the jury in a similar manner with respect to defendant Vanhoy.

Initially, we note that the instructions were in substantial accord with the pattern jury instructions. See N.C.P.I.—Crim. 202.20A (1989). Although defendants failed to object to the trial court's instructions, defendants nevertheless contend, for a variety of reasons, that this Court should not review this assignment of error for plain error. After careful consideration of defendants' arguments, we find them unpersuasive and continue to adhere to our previous cases holding that review of unpreserved instructional errors is conducted under the plain error standard of review. See State v. Odom, 307 N.C. 655, 300 S.E.2d 375 (1983); N.C. R. App. P. 10(b)(2). Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

In State v. Jaynes, 342 N.C. 249, 464 S.E.2d 448 (1995), this Court held that the trial court did not commit plain error by failing to instruct the jury on defendant's actual or constructive presence at the scene of the crime, under the theory of acting in concert, because the evidence was sufficiently strong to demonstrate defendant's actual or constructive presence. Id. at 277, 464 S.E.2d at 465; accord State v. Gilmore, 330 N.C. 167, 409 S.E.2d 888 (1991). We have previously recognized that "[t]he distinction between aiding and abetting and acting in concert . . . is of little significance. Both are equally guilty and are equally punishable." State v. Williams, 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980) (citations omitted). Given this stated recognition, we discern no persuasive reason why the rule from Jaynes regarding the lack of a specific instruction on actual and constructive presence in the context of the theory of acting in concert cannot apply with equal force to the lack of a specific instruction on actual or constructive presence in the context of the theory of aiding and abetting.

Applying the rule from Jaynes, our review of the record reveals sufficient evidence to demonstrate defendants' constructive presence such that a specific instruction in this regard was unnecessary. As noted above, defendants explicitly instructed Shankle how to enter

the trailer, where to find the victim, how to kill the victim, where to find money and how to make the murder scene look as if a breaking and entering had occurred. Defendants drove Shankle to the trailer so he could commit the murder and remained in close enough proximity to the trailer to whisk Shankle away just after he committed the murder. Defendants supplied Shankle with money for a motel room so he could escape detection in the hours following the murder. We conclude that evidence of defendants' constructive presence was sufficiently strong that no instruction on presence was required in this case. Defendants have failed to show plain error, and therefore, this assignment of error is overruled.

For the foregoing reasons, we conclude that defendants received a fair trial, free from prejudicial error.

NO ERROR.