STATE OF NORTH CAROLINA v. PATRICK LANE MOODY

No. 64A96

(Filed 7 March 1997)

**1. Criminal Law § 1340 (NCI4th Rev.)— capital sentencing— letters from victim to wife—rebuttal of mitigating evidence**

The trial court did not err in a capital sentencing proceeding by overruling defendant's objection to the introduction of three letters from the murder victim to his estranged wife expressing his love for his wife and his anguish that she had left him on the ground that any probative value of the letters would be outweighed by the danger of unfair prejudice where the letters were introduced to corroborate testimony that defendant loved his wife and did not abuse her, thus rebutting defendant's theory of mitigation that defendant believed that the victim's wife was being abused by the victim. Moreover, the admission of the letters was not plain error because the jury probably would not have reached a different result if the letters had not been admitted.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**2. Criminal Law § 453 (NCI4th Rev.)— capital sentencing— letters from victim to wife—closing argument—not victim impact statement—no gross impropriety**

The prosecutor's closing argument in a capital sentencing proceeding with regard to letters written by the victim to his

estranged wife did not improperly treat the content of the letters as victim-impact evidence and was not so grossly improper as to require the court to intervene *ex mero motu.*

**Am Jur 2d, Criminal Law § 598.**

**3. Criminal Law § 1335 (NCI4th Rev.)— capital sentencing— sexual relationship with victim's wife—motive**

The trial court did not err in a capital sentencing proceeding by failing to edit defendant's statement to an S.B.I. agent to exclude references to defendant's sexual relationship with the victim's wife because this evidence was relevant to defendant's motive to kill the victim and was admissible under N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Criminal law §§ 598 et seq.**

**4. Criminal Law § 460 (NCI4th Rev.)— capital sentencing—closing argument—poem about death—no gross impropriety**

The prosecutor's reading of a poem about death to the jury during his closing argument in a capital sentencing proceeding did not suggest that a higher authority was calling for the death sentence in this case and was not so grossly improper as to require the trial court to intervene *ex mero motu.*

**Am Jur 2d, Trial §§ 632-639.**

**5. Criminal Law § 1324 (NCI4th Rev.)— death penalty statute—constitutionality**

The North Carolina death penalty statute is constitutional.

**Am Jur 2d, Trial §§ 1441 et seq.**

**6. Criminal Law § 1387 (NCI4th Rev.)— mitigating circumstance—domination by another—instructions**

The trial court's instruction on the statutory mitigating circumstance of domination by another was not erroneous because one or more of the alternatives set forth in the general legal definition of domination in the first portion of the instruction may not have applied directly to the facts of this case. In any event, the instruction in this case was not erroneous where the second portion of the instruction was tailored to defendant's evidence on domination and allowed the jury to determine whether that evi-

dence amounted to domination as defined by the general defini-tion. N.C.G.S. § 15A-2000(f)(5).

**Am Jur 2d, Criminal Law § 598.**

**7. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— mitigating circumstances—incorrect statement on Issues and Recommendation as to Punishment form—correction by supplemental instructions—no plain error**

Although a statement on the Issues and Recommendation as to Punishment form given to jurors in a capital sentencing pro-ceeding that "yes" should be written beside a mitigating circum-stance if one or more jurors find that circumstance by a prepon-derance of the evidence "and that it has mitigating value" was incorrect for statutory mitigating circumstances since statutory circumstances, if found, have mitigating value, this statement did not constitute plain error where this mistake was brought to the court's attention before the jury began its deliberations; the court explained the mistake to the jury and gave supplemental instruc-tions on the distinction between statutory and nonstatutory miti-gating circumstances; the court also instructed the jury to delete the offending phrase either by marking through the phrase on the form or by mentally omitting it; and after the jury returned its ver-dict, the court polled the jurors as to whether they understood the instructions on mitigating circumstances and the jurors indi-cated that they did. The instructions given were in accordance with the law, and it is presumed that the jurors were able to fol-low the instructions as they were given.

**Am Jur 2d, Criminal Law §§ 609 et seq.**

**8. Criminal Law § 1354 (NCI4th Rev.)— capital sentencing— aggravating and mitigating circumstances—recording of each juror's vote not required**

The trial court did not err in denying defendant's motion to have each juror in a capital sentencing proceeding record his or her vote on each aggravating and mitigating circumstance on the Issues and Recommendation as to Punishment form. The failure to record each juror's vote did not hamper meaningful appellate review of trial error or the Supreme Court's proportionality review since the jury's finding of an aggravating circumstance must be unanimous, and since a "yes" answer to a mitigating circumstance simply means that one or more jurors found the

mitigating circumstance to exist, and whether the mitigating circumstance was found by one juror or by twelve jurors makes no difference to the Supreme Court's finding on appellate review of trial error.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**9. Evidence and Witnesses § 1346 (NCI4th)— confessions— mental capacity to waive rights**

The evidence at a suppression hearing supported the trial court's findings that, although defendant is of subnormal intelligence, he had the mental capacity to waive his constitutional rights against self-incrimination and to counsel prior to making two confessions to law enforcement officers and that his confessions were made freely, voluntarily, and understandingly.

**Am Jur 2d Criminal Law §§ 598 et seq.**

**10. Evidence and Witnesses § 1354 (NCI4th)— inculpatory statement—not verbatim transcript—suppression not required**

An S.B.I. agent's notes of inculpatory statements made by defendant were not required to be suppressed because they were not a verbatim transcript which included the agent's questions where the agent merely read the notes and there was no attempt to introduce the notes as defendant's written statement.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**11. Evidence and Witnesses § 1113, 966 (NCI4th)— notes of defendant's inculpatory statements—admissions of party opponent—past recorded recollection**

An S.B.I. agent could properly read from a narrative report prepared from his notes of inculpatory statements made by defendant even though the notes were not acknowledged or adopted by defendant since defendant's statements were admissible as admissions of a party opponent. Moreover, the S.B.I. agent's reading from the narrative report prepared from his notes was admissible under the doctrine of past recorded recollection set forth in Rule of Evidence 803(5) where the agent testified that the report refreshed his recollection of the interview with defendant. N.C.G.S. § 8C-1, Rule 803(5).

**Am Jur 2d, Evidence §§ 1258-1275.**

STATE v. MOODY

[345 N.C. 563 (1997)]

**12. Criminal Law § 732 (NCI4th Rev.)— weight of confession—guilty plea—instruction not required**

The trial court did not err by failing to give the pattern jury instruction on the weight to be given a defendant's confession where defendant pleaded guilty to first-degree murder and there was thus no question as to his guilt of the crime charged.

**Am Jur 2d, Evidence §§ 708-753.**

**13. Criminal Law § 258 (NCI4th Rev.)— illness of defendant—recess—informing jury of reason for delay**

When defendant became ill during the trial and the court ordered a temporary recess to obtain medical treatment for defendant, the trial court did not err in informing the jury of the reason for the delay.

**Am Jur 2d, Criminal Law § 904.**

**Necessity and content of instructions to jury respecting reasons for or inferences from accused's absence from state criminal trial. 31 ALR4th 676.**

**14. Jury § 108 (NCI4th)— jury selection—denial of individual voir dire—yes or no answers—no abuse of discretion**

The fact that prospective jurors in a capital trial answered "yes" or "no" to counsel's questions during jury selection is insufficient to show an abuse of discretion on the part of the trial court in denying defendant's motion for individual *voir dire.*

**Am Jur 2d, Jury §§ 193 et seq.**

**15. Criminal Law § 690 (NCI4th Rev.)— capital sentencing—mitigating circumstances—uncontradicted evidence—peremptory instruction**

When submitting to the jury in a capital sentencing proceeding uncontradicted evidence supporting a mitigating circumstance, the appropriate device is a peremptory instruction rather than a directed verdict.

**Am Jur 2d, Trial § 1487.**

**16. Criminal Law § 690 (NCI4th Rev.)— nonstatutory mitigating circumstances—pattern peremptory instruction inappropriate**

The pattern jury peremptory instruction set forth in N.C.P.I.—Crim. 150.11 is for statutory mitigating circumstances

STATE v. MOODY

[345 N.C. 563 (1997)]

and should not be given for nonstatutory mitigating circumstances because it does not reflect the distinction between statutory and nonstatutory mitigating circumstances.

**Am Jur 2d, Trial § 1487.**

17. **Criminal Law § 1355 (NCI4th Rev.)— capital sentencing proceeding—instructions—unanimity for life verdict**

The trial court did not err by instructing the jury in a capital sentencing proceeding in language requiring the jury to be unanimous in order to return a life verdict.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

18. **Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant pleaded guilty to first-degree murder; the jury found as aggravating circumstances that defendant had previously been convicted of a violent felony and that defendant committed the murder for pecuniary gain; defendant conspired with the victim's wife over a period of several weeks to kill the victim; defendant lured the victim to a field on the pretense of being interested in purchasing the victim's automobile and then shot the victim in the back of the head; defendant had previously been convicted of attempted murder; and by killing the victim, defendant stood to gain a portion of the insurance proceeds on the victim's life as a result of his relationship with the victim's wife. The fact that defendant's coparticipant in the murder (the victim's wife) did not receive a death sentence does not render defendant's sentence of death disproportionate. Furthermore, the prosecutor's decision to prosecute defendant, and not the coparticipant, capitally does not render defendant's death sentence unconstitutional where there was no showing that this decision was based on an unjustifiable standard such as race, religion, or other arbitrary classification.

**Am Jur 2d, Criminal Law §§ 609 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Greeson, J., at the 10 July 1995 Criminal Session of Superior Court, Davidson County. Heard in the Supreme Court 12 December 1996.

**STATE v. MOODY**

[345 N.C. 563 (1997)]

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*William F. Massengale and Marilyn G. Ozer for defendant-appellant.*

FRYE, Justice.

Defendant, Patrick Lane Moody, was indicted on 9 January 1995 for the 16 September 1994 first-degree murder of Donnie Ray Robbins. On 14 July 1995, during the State's presentation of evidence, defendant changed his plea to guilty of first-degree murder. Following the entry and acceptance of the guilty plea, the trial court held a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, and the jury recommended a sentence of death. The jury found as aggravating circumstances that defendant had been previously convicted of a felony involving the use of violence and that the murder was committed for pecuniary gain. The jury also found six of the twenty-one statutory and nonstatutory mitigating circumstances submitted to it. On 20 July 1995, the trial judge, in accordance with the jury recommendation, imposed a sentence of death for the first-degree murder conviction.

Defendant makes thirteen arguments on appeal to this Court. We reject each of these arguments and conclude that defendant's capital sentencing proceeding was free of prejudicial error and that the death sentence is not disproportionate.

The State's evidence in the guilt and sentencing phases tended to show the following facts and circumstances. In July 1994, defendant started having an affair with Wanda Robbins (Wanda), the wife of the victim, Donnie Robbins (Donnie). Over the course of their affair, defendant and Wanda discussed various plans to murder Wanda's husband and share the insurance proceeds. On 16 September 1994, defendant went to Loman's Trailer Park in Thomasville, North Carolina, to the home of Donnie and Wanda Robbins. Defendant identified himself as Darryl Thompson and pretended to be interested in buying Donnie's old Chevrolet automobile. He and Donnie went to a field near the trailer park where the automobile was located. Defendant asked Donnie to measure the automobile, purportedly to determine whether it would fit on a "roll-back" truck. As Donnie leaned over the hood of the automobile to measure it, defendant shot him in the back of the head with a .32-caliber semiautomatic pistol he had stolen the previous day from a house near the trailer park.

Defendant and Wanda had agreed to meet at the hospital following the murder. While at the hospital, defendant identified himself as Darryl Thompson to investigating officers and consented to taking a gunshot residue test. Defendant then left the hospital. Early the next morning, defendant was apprehended and taken into custody. Later that morning, following defendant's directions, the police found the murder weapon, the black jacket defendant had been wearing, and other items of evidence. After being arrested, defendant waived his *Miranda* rights and made a statement.

At trial, after the State had begun its case-in-chief and had presented evidence from seven witnesses, defendant withdrew his plea of not guilty and entered a plea of guilty to murder in the first degree. The court found that there was a factual basis for the plea, defendant was competent to stand trial, defendant was satisfied with his attorney, and the plea was made freely and voluntarily. The trial court then accepted the plea.

The State began the presentation of its capital sentencing proceeding evidence following the announcement of defendant's change of plea to the jury. Two residents and the owner of the trailer park testified that Donnie and Wanda argued often and that on at least two occasions these residents had identified mercury in the beer that Donnie was drinking. A life insurance agent also testified that Wanda Robbins had called her at 5:30 a.m. the morning after the murder to complete the paperwork necessary for Wanda's claim for the insurance benefits payable upon Donnie's death. In addition, SBI Special Agent Timothy Thayer testified that he interviewed defendant on 21 September 1994, and Agent Thayer read the transcription of his notes from that interview which described defendant's life during the summer before the murder. At the conclusion of the State's evidence, defendant's prior convictions in Florida for attempted first-degree murder and conspiracy to commit first-degree murder were introduced.

Defendant's evidence at the capital sentencing proceeding tended to show the following facts and circumstances. Defendant was involved with a religious group called "His Laboring Few Bikers' Ministry," which focused on the spiritual needs of bikers at biker rallies. Two members of the ministry took defendant into their home after meeting defendant in Florida and sending him a bus ticket to come to High Point to live with them. Steve Ervin, an ordained minister with the ministry, testified that defendant had become involved

with the ministry but later had become distant upon meeting Wanda Robbins.

Defendant's half-brother and mother testified as to defendant's traumatic and abusive childhood. Dr. Jerry Noble, a psychologist, diagnosed defendant as suffering from an attention deficit hyperactivity disorder, alcohol dependence, a mixed personality disorder, child abuse syndrome, and psychologically caused physical problems. Dr. Noble testified that defendant had borderline intellectual functioning with a full scale IQ of 81.

Defendant testified as the last witness in the sentencing phase of the trial. He affirmed that he shot and killed the victim but denied that he did so in order to get insurance money. On cross-examination, defendant testified that he killed the victim because Wanda threatened to notify the police about his outstanding warrants in Florida.

In his first argument, defendant contends that the trial court erred by failing to suppress a series of inflammatory and irrelevant letters that were published to the jury during the capital sentencing proceeding. Defendant first contends that the trial court erred in overruling his objection to the introduction of the letters on the basis that any probative value of the letters would be substantially outweighed by the danger of unfair prejudice. In addition, defendant argues that the letters were not properly admitted because they are hearsay and were not properly authenticated. Finally, defendant argues that the letters were improperly admitted as victim-impact evidence.

[1] During the capital sentencing proceeding, the State moved to introduce a series of exhibits into evidence, one of which was three letters written by the victim to his wife, who was not living in their home at the time. The letters express the victim's love for his wife and his pain and anguish that she had left him. Defendant objected, arguing that the letters should be excluded under Rule 403 of the North Carolina Rules of Evidence. The trial court overruled his objection, and defendant challenges this ruling as error.

Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (1992). "Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question is one of degree." *State v. Weathers*, 339 N.C. 441, 449, 451 S.E.2d 266, 270 (1994). Relevant evidence is properly admissible "unless the judge determines that it must be excluded, for instance, because of the risk of 'unfair prejudice.' " *State v. Mercer*, 317 N.C. 87, 94, 343 S.E.2d 885, 889 (1986). " 'Unfair prejudice,' as used in Rule 403, means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.' " *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1996) (quoting N.C.G.S. § 8C-1, Rule 403 commentary (Supp. 1985)).

In the instant case, the letters were introduced for the purpose of corroborating testimony that the victim loved his wife and did not abuse her, rebutting one of defendant's theories of mitigation, that is, that defendant believed that Wanda was being abused by the victim. While the letters expressed heartfelt emotion on the part of the victim, we find nothing in the instant case to suggest that the jury's decision to recommend a sentence of death was based on any unfair prejudice that may have been created by these letters. "In general, the exclusion of evidence under the balancing test of Rule 403 of the North Carolina Rules of Evidence is within the trial court's sound discretion." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). We conclude that the trial court did not abuse its discretion in admitting the three letters.

Defendant also contends that it was error to admit the letters because they are hearsay and were not properly authenticated. Defendant did not object to the admission of the letters on these bases at trial and therefore our review is for plain error. *See State v. Sierra*, 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994). "In order to prevail under a plain error analysis, defendant must establish not only that the trial court committed error, but that 'absent the error, the jury probably would have reached a different result.' " *Id.* (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)). Despite the emotional nature of the letters, we conclude that the jury probably would not have reached a different result if the letters had not been admitted, and thus, we find no plain error.

[2] Finally, defendant contends that the prosecutor's closing argument improperly treated the content of the letters as victim-impact evidence and that the evidence was not permissible under *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720 (1991), because it caused

STATE v. MOODY

[345 N.C. 563 (1997)]

the jury to return a verdict of death, not because defendant was a murderer, but because he was an adulterer.

In *Payne v. Tennessee*, the United States Supreme Court held that

if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.

*Id.* at 827, 115 L. Ed. 2d at 736. In the instant case, the prosecutor argued as follows:

We have walked with Donnie. You have walked Donnie through his letters to Wanda. I hope you read each of those letters. I saw it looked like most of you were reading those letters. Donnie took Wanda back. Donnie was trying with those letters to get Wanda back. I think, if you remember, Donnie didn't know why she left. Donnie talks about the Lord in those letters. And that's what you have.

Defendant did not object to the prosecutor's argument.

In reviewing counsel's arguments in the absence of an objection, we have said:

Control of counsel's argument is largely left to the trial court's discretion. When a defendant does not object to an alleged improper jury argument, the trial judge is not required to intervene *ex mero motu* unless the argument is so grossly improper as to be a denial of due process.

*State v. Howell*, 335 N.C. 457, 471, 439 S.E.2d 116, 124 (1994) (citations omitted). We have rejected defendants' contentions that similar arguments were so grossly improper as to require the trial court to intervene *ex mero motu. See, e.g., State v. Bond*, 345 N.C. 1, 37, 478 S.E.2d 163, 182-83 (1996). We conclude that the prosecutor's argument in reference to the victim's letters written to his wife was not so grossly improper as to require the court to intervene *ex mero motu.* Accordingly, we reject defendant's first argument.

[3] In his second argument, defendant contends that the trial court erred in failing to edit defendant's statement to exclude references to defendant's sexual relationship with the victim's wife. After defend-

ant had pleaded guilty, SBI Agent Thayer was called to testify to defendant's statement given to Agent Thayer after defendant's arrest. Defendant made a pretrial motion to suppress the statement, which the trial court denied. At no time did defendant make a motion *in limine* to edit the statement. Nonetheless, defendant contends that the trial court was aware that the statement dealt with the sexual relationship between defendant and the victim's wife, and thus, the trial court should have, on its own motion, edited the statement to exclude the sexual passages. We disagree.

Absent an objection or motion at trial, our review of this argument on appeal is limited to that for plain error such that the jury probably would have reached a different result had the sexual passages been excluded from the statement. *See State v. Mitchell*, 328 N.C. 705, 403 S.E.2d 287 (1991). Given that the evidence of defendant's affair with the victim's wife was relevant to defendant's motive to kill the victim, defendant's statement was admissible pursuant to N.C.G.S. § 15A-2000(a)(3), which provides that "[e]vidence may be presented as to any matter that the court deems relevant to sentence." However, even assuming *arguendo* that some portion of the statement should have been excluded, we are satisfied that the failure to do so did not affect the jury's recommendation. Therefore, the trial court's admission of the entire statement does not amount to plain error.

[4] In his third argument, defendant contends that the trial court erred in not intervening *ex mero motu* when the prosecutor recited the following poem during closing argument:

> Dance, death! Your deeds are done. A new time has set in and you are summoned by the Maker. One day death itself will dance before the Lord. The wind and the breath of the Lord will call for death, and slowly death will bring all limp life and all brittle forms of death to the judgment seat. God will pronounce death guilty, will sentence death to death and thus sentence to death tears, crying, hunger, lonesomeness and disease. Even now there is enough evidence gathered against death by those who live under the spirit. They build evidence while they work and while they wait for the dance and date of death. The date has been set. God knows the hour.

Defendant contends this poem suggests that a higher authority is calling for the death sentence and that the jurors must heed this judgment.

STATE v. MOODY

[345 N.C. 563 (1997)]

We reject defendant's third argument on the authority of *State v. Elliott*, 344 N.C. 242, 284-85, 475 S.E.2d 202, 222 (1996) (holding that the reading of this same poem to the jury was not so grossly improper as to require the trial court to intervene *ex mero motu*).

[5] In his fourth argument, defendant contends that the death penalty is unconstitutional, and therefore, his death sentence is unconstitutional. Defendant concedes that this Court has held against his position, *see, e.g., State v. Williams*, 339 N.C. 1, 52-53, 452 S.E.2d 245, 276 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995), and advances no compelling reason for us to depart from our prior holdings. Accordingly, we reject defendant's fourth argument.

[6] In his fifth argument, defendant contends that the trial court erred by including inapplicable language in the jury instruction on the mitigating circumstance of domination. Defendant objected to the inclusion of a portion of the pattern jury instruction, and the trial court overruled defendant's objection.

One of the statutory mitigating circumstances is that the "defendant acted under duress or under the domination of another person." N.C.G.S. § 15A-2000(f)(5) (Supp. 1994) (amended 1995). The pattern jury instruction divides this statutory mitigating circumstance into two parts—one on duress and the other on domination—allowing the jury to find two mitigating circumstances. N.C.P.I.—Crim. 150.10 (1995). On the mitigating circumstance of domination, the trial court instructed in part:

> Now, a defendant acts under the domination of another person if he acts at the command or under the control of the other person or in response to the assertion of any authority to which the defendant believes he's bound to submit or which the defendant did not have sufficient will to resist.

Defendant objected to the inclusion of "or in response to the assertion of any authority to which the defendant believes he is bound to submit" and "or which the defendant did not have sufficient will to resist." Defendant contends that the inclusion of these phrases was prejudicial error because that language was inapplicable to the case and may have prevented one or more jurors from considering or giving effect to some of the mitigating evidence. We find no error.

We note first that the trial court's instruction includes the word "or" between the phrases of the instruction. The disjunctive creates alternatives which allow the jury to find that defendant acted under

the domination of another person if *any* of the alternatives listed in the instruction are found. The instruction gave a generalized legal definition of domination, and the fact that one or more of the alternatives may not have applied directly to the facts of the instant case does not render the instruction erroneous.

Moreover, the second paragraph of the instruction on this mitigating circumstance was tailored to defendant's evidence on domination:

> Now, you would find this mitigating circumstance if you find, as all the evidence tends to show, that the defendant was in love with Wanda Robbins and would do anything to stay in her favor, and that Wanda Robbins told the defendant, I want him killed tonight or he might kill me tonight. This is the last chance we got. You either do this and forget about me and the insurance money, and that as a result, the defendant was under the domination of Wanda Robbins when he killed Donnie Robbins.

This instruction directed the jury's attention to the evidence of domination and allowed the jury to determine whether that evidence amounted to domination as defined by the general definition. It therefore was not error.

**[7]** In his sixth argument, defendant contends that the trial court erred by giving conflicting and confusing instructions as to the mitigating circumstances. We note that defendant did not properly preserve this alleged error by any action taken at trial or by specifically and distinctly arguing plain error. *See State v. Frye,* 341 N.C. 470, 496, 461 S.E.2d 664, 677 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 526 (1996). Notwithstanding defendant's failure to preserve this issue for appeal, "in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure and following the precedent of this Court electing to review unpreserved assignments of error in capital cases," *State v. Gregory,* 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996), we elect to consider defendant's contention under a plain error analysis.

After the court had orally instructed the jury, each juror was given a copy of the Issues and Recommendation as to Punishment form agreed upon by counsel and the court. Before the jury began its deliberations, defense counsel brought to the attention of the court an erroneous sentence in the form that preceded all of the mitigating circumstances: "In the space provided after each mitigating circumstance, write 'yes' if one or more of you finds that mitigating circum-

STATE v. MOODY

[345 N.C. 563 (1997)]

stance by a preponderance of the evidence and that it has mitigating value."

The language "and that it has mitigating value" is incorrect for the statutory mitigating circumstances since the statutory mitigating circumstances, if found, have mitigating value. The court explained the error to the jury and gave supplemental instructions on the distinction between statutory and nonstatutory mitigating circumstances. The court also instructed the jury to delete the offending phrase either by marking through the phrase on the form or by mentally omitting it. In addition, after the jury had returned its verdict, the court polled the jurors as to whether they understood the instructions on the mitigating circumstances, and the jurors indicated that they did.

Defendant does not contend that the supplemental instructions given by the court were incorrect; he contends that the conflicting instructions created a reasonable probability that the jurors were confused and did not understand the proper instructions. In *State v. Daniels*, 337 N.C. 243, 275, 446 S.E.2d 298, 318 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), this Court approved the pattern jury instruction to which the oral instructions given by the trial court in the instant case conformed. In addition, we have stated that "[w]e presume 'that jurors . . . attend closely [to] the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.' " *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 85 L. Ed. 2d 344, 360 n.9 (1985)) (first alteration in original), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). We conclude that the instructions given here were in accordance with the law and that the jury was able to follow the instructions as they were given. In light of the proper instructions given, the supplemental instructions given, and the polling of the jury, the error on the Issues and Recommendation as to Punishment form did not constitute error under the plain error rule.

[8] In his seventh argument, defendant contends that he is entitled to a new capital sentencing proceeding because the trial court erred in denying his motion to have each juror record his or her vote on each aggravating and mitigating circumstance. Defendant requested that the Issues and Recommendation as to Punishment form include twelve lines following each aggravating and mitigating circumstance to record each juror's vote on each circumstance. This request was

denied. Defendant contends that this ruling hampers meaningful appellate review of trial error and this Court's statutory proportionality review. We do not agree.

As to the aggravating circumstances, a "yes" answer is entered on the Issues and Recommendation form only if all twelve jurors unanimously find a circumstance to exist. Thus, only one line is needed to record the jury's unanimous finding as to each aggravating circumstance. As to mitigating circumstances, unanimity is not required, and a "yes" answer simply means that one or more jurors have found a mitigating circumstance to exist. Thus, whether the mitigating circumstance was found by one juror or twelve jurors makes no difference in this Court's finding of prejudice on appellate review of trial error. We have also concluded that individual polling as to how each juror voted on the aggravating and mitigating circumstances is not required for effective proportionality review. See State v. Lee, 335 N.C. 244, 291, 439 S.E.2d 547, 572, cert. denied, —— U.S. ——, 130 L. Ed. 2d 162 (1994). Therefore, the trial court did not err in denying defendant's request. Accordingly, we reject this argument.

In his eighth argument, defendant contends that the trial court erred in admitting evidence of defendant's statements made to law enforcement agents. Defendant made two inculpatory statements: On 17 September 1994, defendant dictated a statement to Detective Tilley which defendant then read and signed; and on 21 September 1994, SBI Agent Thayer interviewed defendant and took notes which were not signed by defendant. Prior to trial, defendant moved to suppress the 17 September statement on the basis that he lacked the capacity to waive his constitutional rights against self-incrimination and to counsel, and moved to suppress the 21 September statement on the basis that it was not voluntary and was not written or signed by him. After a hearing, the trial court denied defendant's motions.

[9] As to both of the statements, defendant contends that he has subnormal intelligence and he was incapable of understanding the import of the Miranda warnings and therefore made an uninformed decision in waiving his rights. Defendant further contends that the trial court's findings of fact and order denying suppression of the statements are contrary to the evidence. Among the court's findings of fact is the following:

16. The defendant is of subnormal intelligence and has problems with reading, spelling, and arithmetic. The defendant[,] however,

had no problems understanding Officer Tilley and Agent Thayer and he at all times responded coherently to their questions regarding the death of Donnie Ray Robbins and he in all respects appeared to understand and respond to information on a concrete level. Moody has no history of mental illness and at no time exhibited any erratic behavior in the presence of any law enforcement officer which would indicate that he was suffering from any mental impairment that would impair his ability to evaluate his rights or would in any way render him incapable of voluntarily waiving any right in regard to making a statement.

Defendant does not point to specific evidence showing how the trial court's findings are unsupported or contrary to the evidence, and after our review of the transcripts and record, we conclude that the findings of fact are supported by substantial evidence taken at the suppression hearing. The trial court's findings of fact support its conclusion that defendant's constitutional rights were not violated and that the statement was made freely, voluntarily, and understandingly. Accordingly, the trial court did not err in admitting the statements on this basis.

As to the 21 September statement, defendant contends that the statement was not a complete transcript of the interview with Agent Thayer, and therefore, it should have been suppressed. We disagree.

[10] Defendant relies on *State v. Wagner*, 343 N.C. 250, 470 S.E.2d 33 (1996), for his contention that the statement should have been suppressed because it was not a verbatim transcript of the interview including Agent Thayer's questions. *Wagner* addressed the authentication requirements for the admission of a defendant's written confession. At no time was Agent Thayer's record of his interview with defendant characterized as defendant's written confession, nor was the record itself admitted into evidence. Thus, the requirements outlined in *Wagner* do not apply.

[11] Defendant also contends that the statement read by Agent Thayer was not acknowledged or adopted by defendant. However, acknowledgement or adoption was not necessary because "[a] statement made by defendant and offered by the State against him is admissible as an exception to the hearsay rule as a statement of a party-opponent." *State v. Gregory*, 340 N.C. 365, 401, 459 S.E.2d 638, 658 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996). Further, a past recollection that has been memorialized by a witness is covered under another exception to the hearsay rule, and in

accordance with that exception, that record may be used at trial to refresh the past recollection:

> Recorded Recollection.—A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

N.C.G.S. § 8C-1, Rule 803(5) (1992). At trial, Agent Thayer testified that during the interview he took detailed notes, taking down what defendant said verbatim; that after the interview he dictated these notes into narrative form; and that the notes he read at trial were typed from this dictation. Agent Thayer then read from his report and stated that the report refreshed his recollection of the interview with defendant. This testimony comported with the exceptions to the hearsay rule and, thus, was properly admitted and used at trial.

[12] Defendant's final contention under this argument is that the trial court committed plain error by not giving *ex mero motu* the following pattern jury instruction on the weight to give a defendant's confession:

> There is evidence which tends to show that the defendant confessed that he committed the crime charged in this case. If you find that the defendant made that confession, then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

In the instant case, defendant pleaded guilty to first-degree murder, and therefore, there was no question as to his guilt of the crime charged. Thus, the instruction does not apply, and the trial court did not err in not giving the instruction.

[13] In his ninth argument, defendant contends that the trial court erred by informing the jury that defendant had become ill. On the morning of 13 July 1995, defendant became ill with a gastrointestinal disorder that required medical attention. The trial court ordered a temporary recess to obtain treatment for defendant and informed the jury of the reason for the delay. Defense counsel did not object to the

trial court's announcement to the jury but assigns error on the basis that the announcement placed defendant in the position of appearing to be the cause of the delay, thereby prejudicing him. After reviewing the trial court's announcement, we conclude that its explanation of the delay was neutral, and therefore we find no error.

[14] In his tenth argument, defendant contends that the trial court erred in denying his pretrial motion for individual *voir dire*. Defendant notes that this Court has consistently held that the decision whether to allow individual *voir dire* is a matter for the trial court's discretion and that such ruling will not be disturbed absent an abuse of discretion. *State v. Burke*, 342 N.C. 113, 122, 463 S.E.2d 212, 218 (1995). However, defendant contends that the trial court abused its discretion by not intervening when it "observed how poorly the *voir dire* was proceeding." Defendant argues he would have been able to conduct a more effective examination of the panel if he had been allowed to question the jurors individually, and as an example, defendant points to the examination of a prospective juror who responded either "yes" or "no" to all but one question. We do not believe that the fact that prospective jurors answer "yes" or "no" to counsel's questions is sufficient to show an abuse of discretion on the part of the trial court in denying individual *voir dire*. We reject this argument.

[15] In his eleventh argument, defendant contends that the trial court erred in declining to give directed verdict instructions for the four requested statutory mitigating circumstances. Defendant concedes that this Court has held contrary to his position in *State v. Carter*, 342 N.C. 312, 325, 464 S.E.2d 272, 280 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 957 (1996), but asks this Court to reconsider its position.

We stated in *Carter*:

While the evidentiary standard for a criminal defendant seeking a peremptory instruction may be the functional equivalent of the standard for a civil directed verdict, the two principles are distinct legal entities. In a capital sentencing proceeding, when submitting to the jury uncontradicted evidence supporting a mitigating circumstance, the appropriate device is a peremptory instruction.

*Id.* In the instant case, the trial court gave peremptory instructions on the four statutory mitigating circumstances at issue. Defendant has

suggested no compelling reason to overrule *Carter*. Accordingly, we reject this argument.

**[16]** In his twelfth argument, defendant contends that the trial court erred in declining to give his requested instruction for the nonstatutory mitigating circumstances. Defendant requested that the pattern jury peremptory instruction, N.C.P.I.—Crim. 150.11 (1991), be given for the nonstatutory mitigating circumstances, and the trial court denied his request.

First, we note that the pattern jury instruction defendant requested is for statutory mitigating circumstances. In fact, we have held that this pattern instruction should not be given for nonstatutory mitigating circumstances because it does not reflect the distinction between statutory and nonstatutory mitigating circumstances. *State v. Buckner*, 342 N.C. 198, 235, 464 S.E.2d 414, 436 (1995), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 47 (1996). Thus, the trial court correctly refused to give the requested instruction. We reject defendant's argument to the contrary.

**[17]** In his thirteenth argument, defendant contends that the trial court erred by instructing the jury in language that implied that the jury must be unanimous in order to return a life verdict. Defendant concedes that a majority of this Court has held similar instructions for a unanimous verdict to be correct.[1] *State v. McLaughlin*, 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996); *State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 482 (1996). As the language used by the trial court in the instant case conforms with the instructions previously approved by this Court, we must reject defendant's final argument.

## PROPORTIONALITY REVIEW

**[18]** We turn now to the duties reserved exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is exces-

---

1 Despite the trenchant dissents in *McLaughlin* and *McCarver* written by the author of this opinion, the majority of this Court held that the jury must be unanimous in order to answer "no" to Issues One, Three, and Four on the Issues and Recommendation as to Punishment form. This precedent is now binding on the writer by virtue of the doctrine of *stare decisis*.

sive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2).

In the instant case, defendant pleaded guilty to first-degree murder. During defendant's capital sentencing proceeding, the jury found the two aggravating circumstances that were submitted: that defendant had been previously convicted of a violent felony, N.C.G.S. § 15A-2000(e)(3), and that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). Of the four statutory mitigating circumstances submitted, including the catchall, the jury found only one: that the murder was committed while defendant was mentally or emotionally disturbed, N.C.G.S. § 15A-2000(f)(2). The jury also found five of the seventeen nonstatutory mitigating circumstances submitted. After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the finding of the two aggravating circumstances found by the jury. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In our proportionality review, it is proper to compare the present case to cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

In support of his argument that his death sentence is disproportionate, defendant submits that Wanda Robbins was equally culpable, and the fact that she did not receive a death sentence demonstrates the disproportionality of his death sentence. We disagree.

We have held that it is not error to refuse to admit evidence that a coparticipant received a life sentence and to refuse to submit this proposed mitigating circumstance to the jury. *State v. Williams*, 305

N.C. 656, 687, 292 S.E.2d 243, 261-62, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982); *see also State v. Irwin,* 304 N.C. 93, 104, 282 S.E.2d 439, 447 (1981) (evidence of plea bargain and sentencing agreement between the State and a codefendant was irrelevant and properly excluded from the jury's consideration as a mitigating circumstance because such evidence had no bearing on defendant's character, record, or the nature of his participation in the offense). While these cases address what evidence is proper for the jury to consider, we also conclude that the different disposition of defendant's coparticipant's case does not itself render defendant's death sentence disproportionate.

In addition, we do not find any merit in defendant's assertion that *State v. Vanhoy,* 343 N.C. 476, 471 S.E.2d 404 (1996), dictates a different result. Defendant contends that *Vanhoy* demonstrates how cases in which someone is solicited to commit murder are treated differently in different prosecutorial districts and that therefore his death sentence violates *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346 (1972). "This Court has consistently recognized that a system of capital punishment is not rendered unconstitutional simply because the prosecutor is granted broad discretion." *State v. Garner,* 340 N.C. 573, 588, 459 S.E.2d 718, 725 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 872 (1996). Moreover, "the only limitation on this discretion pertinent to this case is that the decision to prosecute capitally may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* There is nothing in the record in the instant case to show that the decision to prosecute defendant, and not the coparticipant, capitally was based on such an unjustifiable standard.

In conducting our review, it is also proper to compare this case to those where the death sentence was found not disproportionate. *McCollum,* 334 N.C. at 244, 433 S.E.2d at 164. In *State v. Rose,* 335 N.C. 301, 439 S.E.2d 518, *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 883 (1994), we said, "[o]f the cases in which this Court has found the death penalty disproportionate, none have involved the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance of a prior conviction of a felony involving the threat or use of violence against the person." *Id.* at 351, 439 S.E.2d at 546. This aggravating circumstance was found in the instant case.

The aggravating circumstances found in this case have been present in other cases where this Court has found the sentence of

death proportionate. *See, e.g., State v. Chandler,* 342 N.C. 742, 467 S.E.2d 636 (affirming a death sentence based on the (e)(6) aggravator alone), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 133 (1996); *State v. Jones,* 342 N.C. 457, 466 S.E.2d 696 (affirming a death sentence based on both the (e)(3) and (e)(6) aggravators), *cert. denied,* 135 L. Ed. 2d 1058 (1996); *Carter,* 342 N.C. 312, 464 S.E.2d 272 (affirming a death sentence based on both the (e)(3) and (e)(6) aggravators).

In this case, defendant conspired with the victim's wife over a period of several weeks to kill the victim. Defendant lured the victim out to a field on the pretense of being interested in purchasing the victim's automobile and then shot the victim in the back of the head. Defendant had been previously convicted of an attempted murder, and by killing the victim in the instant case, defendant stood to gain a portion of the insurance proceeds as a result of his relationship with the victim's wife.

After comparing this case to other roughly similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as not disproportionate. Accordingly, we conclude that defendant received a capital sentencing proceeding free of prejudicial error and that the sentence of death is not disproportionate.

NO ERROR.