An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-280

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

STATE OF NORTH CAROLINA

v.                                   Beaufort County
                                     No. 08CRS050412
ASHLEY HOPE WYNN


Appeal by Defendant from judgments entered 1 May 2013 by Judge W. Russell Duke, Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 27 August 2014.


> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Brenda Eaddy, for the State.*
>
> *McCotter Ashton, PA, by Rudolph A. Ashton, III, for the Defendant.*


DILLON, Judge.


Ashley Hope Wynn ("Defendant") appeals from judgments entered upon a jury verdict finding her guilty of felonious breaking and entering; felonious larceny; and obtaining property by false pretenses.

I. Background

On or about 21 September 2007, a contractor reported that certain tools, including a nail gun, had been stolen from the inside of a house that he was constructing. Three days later, two men and a woman took the nail gun to the home of James Ratcliff and sold it to Mr. Ratcliff for $30.00. They gave him a receipt signed by the woman, using the name "Adrian Phelps".

The State came to suspect Defendant, Jonathan Cox, and Ralph Miles as the three individuals who sold the nail gun to Mr. Ratcliff and charged them with various crimes. Mr. Miles pleaded guilty to certain charges and received a mitigated sentence. However, Defendant and Mr. Cox did not plead guilty to any charges and were brought to trial in April 2013 – over five and one-half years after the incident – being tried together.

At trial, Mr. Ratcliff testified concerning the sale, including that he knew the co-defendant, Mr. Cox, and that Mr. Cox had come to his home with a man and woman whom he did not know to sell him the nail gun.

Mr. Miles, who had already pleaded guilty to certain charges, testified that he, Defendant, and the co-defendant, Mr. Cox, sold the stolen nail gun to Mr. Ratcliff.

Defendant testified in her own defense, denying that she had any involvement in the incident. Further, she testified that she had never met Mr. Ratcliff or ever been to Mr. Ratcliff's home.

The jury found Defendant guilty of felonious breaking and entering (the house under construction); felonious larceny (of the nail gun); and obtaining property (money from Mr. Ratcliff) by false pretenses. The trial court entered three separate judgments, sentencing Defendant to eight to ten months for each offense, ordering that the sentences run consecutively. Defendant appeals from those judgments.

## II. Analysis

On appeal, Defendant argues that the trial court erred in admitting into evidence a certain document (the "Document") because it was not properly authenticated. This Document purports to be Defendant's statement made to an investigating officer in which she admits being at Mr. Ratcliff's home on the day in question with Mr. Miles and Mr. Cox, thus contradicting a key part of her trial testimony that she had never been to Mr. Ratcliff's home. The Document contained two signatures, one that purported to be that of Defendant acknowledging that statement as hers and one that purported to be that of an

investigating officer acknowledging that he witnessed Defendant sign the statement. We agree that it was error to admit the Document in its entirety. Even assuming, without deciding, that it was proper to allow the jury to consider Defendant's purported signature to authenticate the Document, it was improper to allow the jury to consider the purported signature of the investigating officer to authenticate the Document. Furthermore, we believe that this error was prejudicial. Accordingly, we reverse the judgments against Defendant and order a new trial.

## 1. Admission of the Document

During its case in chief, the State did not attempt to offer the Document into evidence. Defendant testified in her own defense, stating that she was not involved in the crimes; that she had never seen Mr. Ratcliff; and that she had never been to Mr. Ratcliff's home. She also provided a handwriting sample, which was admitted into evidence, in an effort to show that it was not her handwriting on the receipt which was signed by the seller as "Adrian Phelps" and given to Mr. Ratcliff when he bought the nail gun.

During cross-examination, counsel for the State handed Defendant the Document in an attempt to authenticate it. The

State referred to the Document as a voluntary statement she made to "Investigator Gaskins," purportedly an officer investigating the crime. Defendant was equivocal in her testimony regarding her purported signature on the Document. She testified that the signature looked "similar" to her handwriting, and that it was possible that she signed it; however, she stated that she had no memory of signing the statement or signing *any* witness statement. After counsel for the State asked her to read the Document to herself, she testified that she remembered speaking with an investigating officer, but that the statement in the Document was not consistent with what she told the officer; that she had no recollection of the name of the officer with whom she spoke; and that she did not remember signing a witness statement.

During the State's rebuttal, the State moved to introduce the entire Document into evidence. Defendant's counsel objected, arguing that the Document had not been properly authenticated. The trial court overruled the objection and admitted the Document into evidence. On appeal, Defendant argues that the Document was erroneously admitted, contending it was not properly authenticated.

An out-of-court statement of a defendant is admissible

under the exception to the hearsay rule for statements by a party-opponent under Rule 801(d)(A) of the North Carolina Rules of Evidence. *State v. Gregory*, 340 N.C. 365, 401, 459 S.E.2d 638, 658 (1995). However, such a statement is not admissible unless it is properly authenticated. Rule 901 of our Rules of Evidence provides that "[t]he requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2013). Rule 902 provides that certain types of documents are deemed self-authenticating, not requiring extrinsic evidence to be considered authenticated. N.C. Gen. Stat. § 8C-1, Rule 902 (2013).

In the context of a criminal trial, our Supreme Court has further limited the manner in which a document purporting to be the "confession" of the defendant may be authenticated. *State v. Walker*, 269 N.C. 135, 139, 152 S.E.2d 133, 137 (1967) (holding that "[i]f [a] transcribed statement is not read by or to [the] accused, and is not signed by [the] accused, or in some other manner approved, or its correctness acknowledged, the instrument is not legally, or *per se*, the confession of [the] accused; and it is not admissible in evidence as the written confession of [the] accused."). However, these extra

limitations do not apply where the statement by a criminal defendant sought to be introduced is *not* a "confession." *State v. Moody*, 345 N.C. 563, 579, 481 S.E.2d 629, 637 (1997).

Here, we do not believe that the Document is a "confession" of Defendant. Specifically, assuming that the statement in the Document is hers, Defendant does not confess to participating in the crime. Rather, she provides an alternate defense, namely that though she was at Mr. Ratcliff's house on the day in question, she did not participate in the nail gun transaction but rather was there to use Mr. Ratcliff's bathroom. Therefore, the statement would be admissible if properly authenticated under the Rules of Evidence, not subject to the restrictions laid down in *Walker*.

In this case, the record suggests that the State attempted to authenticate the Document in a number of ways. The record indicates that the State attempted to authenticate the Document by asking Defendant if she was familiar with the statement or if she signed it, arguably pursuant to N.C. Gen. Stat. § 8C-1, Rule 901(b)(1) (2013) (allowing authentication through the testimony of a witness with knowledge). However, the record also demonstrates that Defendant denied that she was familiar with the Document or that she remembered signing the Document.

The State then attempted to authenticate the Document by questioning Defendant whether the signature on the Document was similar to hers, again arguably under Rule 901(b)(1). The record also suggests that the State *may have* authenticated the Document by allowing the jury to compare Defendant's purported signature on the Document with the handwriting sample Defendant produced during her trial testimony, arguably under Rule 901(b)(3) (allowing authentication or identification of a signature through "[c]omparison by the trier of fact or by expert witness with specimens which have been authenticated").

Notwithstanding, the record shows that the State represented the Document to be a statement made by Defendant to a law enforcement officer named "Investigator Gaskins" who was investigating the crime. Investigator Gaskins was never called as a witness at trial. In other words, the jury was led to believe that the Document was a statement made *to* Investigator Gaskins; and, accordingly, the State implicitly attempted to authenticate the Document by Investigator Gaskins' purported signature acknowledging that he witnessed Defendant's statement and signature. Specifically, during the State's attempt to authenticate the document on its cross-examination of Defendant, the following exchange took place:

Q: Did you ever talk to *Investigator Gaskins* of the Sheriff's Department about this case?

A: I don't remember.

[District Attorney hands Document to Defendant.]

Q: I'll show you . . . a written statement, one that says "Criminal Investigation Division Voluntary Statement Form". . . .

\* \* \*

Q: You don't remember talking to *Investigator Gaskins* in January of 2008?

A: No, sir. . . .

\* \* \*

Q: *So this statement to Investigator Gaskins* . . . you're saying you don't remember making this statement.

A: No, sir.

(Emphasis added.)

Therefore, assuming, *arguendo*, that it was appropriate to authenticate the Document in the other ways identified above, we believe it was error for the Document to be authenticated by the admission of the purported signature/acknowledgment of Investigator Gaskins. The State did not offer any evidence to authenticate *Investigator Gaskins'* signature, nor did the State call him to testify. His signature was not notarized nor is

there any indication that Investigator Gaskins was signing as a notary or that his signature otherwise served as a proper means to deem the Document as self-authenticated under Rule 902.[1]

The difficulty in this case is that Defendant's counsel was not allowed the opportunity to elaborate on the basis of the objection, though, the record reflects that Defendant's counsel attempted to do so:

> [PROSECUTOR]: Your Honor, for rebuttal, I would move to introduce [the Document into evidence].
>
> THE COURT:     It's admitted.
>
> *     *     *
>
> [DEFENSE ATTORNEY]: Your   Honor,   I   would object to that.
>
> THE COURT:     All right.
>
> [DEFENSE ATTORNEY]: It was not identified –
>
> THE COURT:     Don't argue before the jury. The objection is noted and the objection is overruled.

However, in her brief to this Court, Defendant argues that the Document was not properly authenticated, in part, because the

---

[1] Whether the purported signature of the officer, if properly authenticated, would have been inadmissible based on some other grounds, *e.g.*, hearsay or the right to confrontation, is not before us.  Therefore, our holding should not be construed to support the proposition that the signature would have been admissible merely based on a conclusion that it had been properly authenticated.

State did not call the officer who purportedly wrote down Defendant's statement and because the Document was not properly self-authenticated.

## 2. Prejudicial Effect

Having concluded that the court erred, we must determine if the error is reversible. We believe it is.

Because we believe Defendant properly objected to its admission at trial, the error of admitting the entire Document is reversible if it was prejudicial. N.C. Gen. Stat. § 15A-1443(a) (2013). The test for prejudicial error is "whether there [exists] a *reasonable possibility* that the evidence complained of contributed to the conviction[.]" *State v. Milby*, 302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981) (emphasis added).

In this case, Defendant's entire defense was based on her contention that she was not "the woman" at Mr. Ratcliff's home with Mr. Miles and the co-defendant, Mr. Cox, on the day in question. Defendant emphatically testified that she was not involved in the incident and that she had never seen Mr. Ratcliff or been to his home. The Document, however, contains Defendant's purported statement in which she *admits* being "the woman" at Mr. Ratcliff's home with Mr. Miles and Mr. Cox on the day in question.

We believe that it is *reasonably possible* that a juror would not have been convinced of Defendant's guilt *beyond a reasonable doubt* based on the other evidence presented by the State, apart from the Document. The State's *other* evidence essentially consisted of the testimony of Mr. Miles and the in-court identification by Mr. Ratcliff.

Regarding Mr. Miles' testimony, while he was unequivocal regarding Defendant's involvement, he testified that Defendant was his *former* girlfriend and that he agreed to testify against her in exchange for a reduced sentence. Accordingly, it is reasonably possible that a juror would have afforded his testimony very little weight.

Regarding Mr. Ratcliff's testimony, though he did identify Defendant as "the woman" who sold him the nail gun, it is *reasonably possible* that a juror was not convinced that his in-court identification was sufficiently reliable. Most notably, he admitted that the co-defendant, Mr. Cox, was a long-time acquaintance of his and that – somewhat incredibly – he had a conversation with Mr. Cox just prior to taking the stand in which Mr. Cox indicated that Defendant was "the woman" who sold him the nail gun, signing the receipt given to him as "Adrian Phelps":

> Q: Well, how [d]o you know whether [Defendant's] name is Ashley Wynn or Adrian Phelps?
>
> [MR. RATCLIFF:] Because I just talked to [co-defendant] Jonathan [Cox] today and he told me what her name was.

Further, Mr. Ratcliff admitted that the only time he had ever seen "the woman" – prior to his identification of Defendant at trial – was over five and one-half years earlier, on the day he bought the nail gun. When asked if Defendant was "the woman" who signed the receipt, his response was rather equivocal: "I think so." Finally, Mr. Ratcliff acknowledged his memory of the day in question had faded somewhat; for example, when he admitted misremembering the exact amount he paid for the nail gun, he stated that the sale had happened "long ago" and that he "can't remember some of it."

The trial court, obviously adressing Mr. Ratcliff's equivocal identification of Defendant, directly asked him to clarify his testimony concerning his identification of Defendant, at which time Mr. Ratcliff responded with more certainty. However, despite his increased certainty in response to the trial court's questioning, it is *reasonably possible* that a juror still could have found that Mr. Ratcliff's identification of Defendant was not sufficiently reliable, *based*

*on the manner in which the trial court questioned him and his response*.  Specifically, the trial court commanded Defendant *and* Mr. Cox to stand *together*, whereupon the trial court asked Mr. Ratcliff three times in succession if he was certain that Defendant *and* Mr. Cox, *together*, *were the "people"* who sold him the gun, to which he responded in the affirmative each time, however, with his last response being, "Yes, sir.  I've known [the co-defendant] Jonathan [Cox] forever."[2]

We conclude that it is reasonably possible that a juror became convinced of Defendant's guilt beyond a reasonable doubt by giving substantial weight to the Document.  We recognize that any such juror may have reached his conclusion regarding the Document's authenticity based on any one of the number of ways that the State sought to authenticate the Document.  However, we also recognize that it is reasonably possible that at least one of these jurors found that the Document as a whole was only

---

[2] While a trial court is permitted to question a witness, N.C. Gen. Stat. § 8C-1, Rule 614(b)(2013), our Supreme Court has held that "[s]uch questioning must be conducted in such a manner *as to avoid prejudice to either party*."  *State v. Whittington*, 318 N.C. 114, 125, 347 S.E.2d 403, 409 (1986) (emphasis added).  We do not reach the issue of whether the trial court conducted its questioning in a manner that prejudiced Defendant.  However, in this situation where Mr. Ratcliff had been unequivocal about knowing Mr. Cox, the better practice would have been for the trial court to ask Mr. Ratcliff about the certainty of his identification of Defendant *separately*.

properly authenticated by Investigator Gaskins' acknowledgement, or that said juror afforded the Document substantial weight based on Investigator Gaskins' acknowledgement, which itself was not properly authenticated. Therefore, we must conclude that the error was prejudicial to Defendant and that she is entitled to a new trial.

### III. Defendant's Motion to Dismiss

Though we conclude that Defendant is entitled to a new trial based on the improper admission of the Document, we address another argument raised by Defendant in this appeal, as it may come up in a new trial. In this argument, Defendant contends that the trial court erred in denying her motion to dismiss the charge of breaking and entering into the house under construction due to insufficient evidence.

Regarding this charge, the State relied on the testimonies of the owner of the contracting corporation constructing the house and an employee of the corporation. These witnesses essentially testified that the corporation was occupying the house for the purposes of completing construction and that the house had been broken into and tools had been stolen. Defendant contends that there was no evidence as to the *owner* of the house and that the State was required to identify and call the *owner*

of the house to testify that (s)he had not given Defendant permission to enter the house. We believe the decision by our Supreme Court in *State v. Sellers*, 273 N.C. 641, 161 S.E.2d 15 (1968), is instructive. In that case, the Supreme Court held that an indictment for breaking and entering is sufficient where it alleges the identity of the entity who owns *or* is occupying the building. *Id.* at 650, 161 S.E.2d at 21-22. Here, we note that the indictment charging Defendant states that the house was "occupied" by the contractor. We believe that testimony from the contractor who was occupying the house was sufficient to sustain Defendant's conviction. We do not believe that a conviction for breaking and entering fails because the State failed to call every person who might have a possessory or ownership interest in the property to testify. Therefore, this argument is overruled.

## IV. Conclusion

Based on the foregoing, we reverse the judgments against Defendant and hold that she is entitled to a new trial.

NEW TRIAL.

Judge HUNTER, Robert C. and Judge DAVIS concur.

Report per Rule 30(e).